

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-31-1995

# West Mifflin v Lancaster

Precedential or Non-Precedential:

Docket 94-3025

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"West Mifflin v Lancaster" (1995). *1995 Decisions*. Paper 30.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/30

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NO. 94-3025


BOROUGH OF WEST MIFFLIN and WAYNE F. EVAN,

Petitioners,

v.

GARY L. LANCASTER, UNITED STATES DISTRICT JUDGE,
UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT
OF PENNSYLVANIA; ALAN D. LINDSEY and RANDALL COUGHANOUR;
THE EDWARD J. DeBARTOLO CORPORATION, An Ohio Corporation;
CENTURY III ASSOCIATES, A Pennsylvania Partnership;
SAM VINDOVICH; PAUL PONGRACE; JEFFERY HEIDENREICH;
ROBERT STEFFEY; JOHN THOMPSON; ROBERT F. DONNELLY,
INDIVIDUALS, JANE DOE; JOHN DOE 1; JOHN DOE 2;
JOHN DOE 3; JOHN DOE 4 and JOHN DOE 5,

Respondents


GARY L. LANCASTER, UNITED STATES DISTRICT JUDGE,

Nominal Respondent


Petition for a Writ of Mandamus to the United States
District Court for the Western District of Pennsylvania
(D.C. Civil No. 93-cv-1527)


Argued Tuesday, June 21, 1994

BEFORE:  STAPLETON, GARTH, AND PRATT*, Circuit Judges

(Opinion filed January 31, 1995)

_____

*    Honorable George C. Pratt, United States Circuit Judge for the Second Circuit, sitting by designation.

Patricia A. Monahan    (Argued)
Gaitens, Tucceri & Nicholas, P.C.
519 Court Place
Pittsburgh, PA  15219

        Attorney for Petitioners


Gary N. Altman    (Argued)
206 Derrick Avenue
Uniontown, PA  15401

        Attorney for Respondents
        Lindsey and Coughanour


Theodore O. Struk
Dickie, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA  15222

        Attorney for Remaining
        Respondents

OPINION OF THE COURT


PRATT, Circuit Judge:


FACTS AND BACKGROUND


The operative facts giving rise to this mandamus application are set forth in the civil complaint of respondents Alan D. Lindsey and Randall Coughanour.  In September 1991 Lindsey and Coughanour were involved in disputes with security guards at an indoor shopping mall on Route 51 in West Mifflin Borough, just south of Pittsburgh, Pa.  They had travelled to the mall to shop, but upon their arrival, they were "harassed, threatened, and

assaulted" by the security guards.  When the guards refused their request that the police be summoned, Lindsey and Coughanour themselves telephoned the West Mifflin Police Department requesting assistance.  West Mifflin Police Officer Evan, one of the petitioners in this mandamus application, responded to the call.  Evan refused to arrest or admonish any of the guards, but told Lindsey and Coughanour to leave the mall and never come back; otherwise, they would be arrested.

The following day, Lindsey returned to the mall in an attempt to talk to someone from the DeBartolo organization, which owned the mall, to find out why he had been accosted and why he was not permitted on the mall without permission.  During the next three weeks Lindsey repeatedly and unsuccessfully attempted to contact Sam Vindovich, the mall manager, one of the defendants in the underlying action, to find out why he and Coughanour were banned from the mall.  Lindsey finally consulted his present counsel, who advised him that the law permitted his entrance to the mall as long as the mall was open to the public.

On September 27, 1991, Lindsey and Coughanour returned to the mall to shop, but were accosted and handcuffed in the mall men's room, and then dragged through the mall corridor to mall offices to await the arrival of Officer Evan.

Evan then wrote out summary offense citations for disorderly conduct and defiant trespass.  Lindsey and Coughanour were photographed by a Polaroid camera, and the photographs were at-tached to printed forms that said "DEFIANT TRESPASS".  These paper forms contained, among other things a warning that, if

Lindsey and Coughanour came onto the mall property again, they would be arrested. These preprinted forms were then displayed on a bulletin board in the mall at the security offices for everyone passing in front of the board to see.

The handcuffs were then removed, and Lindsey and Coughanour were ordered to leave the mall, separately, which they did. They were prosecuted and convicted in Common Pleas Court on charges stemming from the incidents at the mall, but on February 26, 1993, a three judge panel of the Superior Court in Allegheny County vacated the convictions and discharged them.

Lindsey and Coughanour then filed a seven count complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, claiming that they had committed no crimes while at the mall and that they had been maliciously abused and prosecuted. As defendants, they named the Borough of West Mifflin and Officer Evan ("the municipal defendants"), who are the petitioners in this mandamus proceeding, as well as the owners, supervisors, and security officers of the mall ("the DeBartolo defendants"). Specifically, Lindsey and Coughanour alleged: (1) state law claims of malicious prosecution, malicious abuse of process, assault, and conspiracy against all defendants; (2) a negligence claim against the municipal defendants; (3) a negligence claim against the DeBartolo defendants; and (4) a federal claim under 42 U.S.C. § 1983 which alleged that the municipal defendants and the DeBartolo defendants conspired to deprive Lindsey and Coughanour of their civil rights through harassment, assault,

false arrest, malicious prosecution, and abuse of process in violation of the 4th, 5th, and 14th amendments.

Relying on the federal civil rights claim, the municipal defendants filed a notice of removal from the state court to the United States District Court for the Western District of Pennsylvania. Lindsey and Coughanour then moved to remand the case back to state court. Magistrate Judge Kenneth J. Benson recommended a remand under 28 U.S.C. § 1441(c) of the entire case, including the § 1983 claim. He found that

> [t]he issues of state law clearly predominate in this matter. Not only do they predominate with respect to the state law claims, but there is also a predominance of state law issues with respect to the single claim pursuant to § 1983.

United States District Judge Gary L. Lancaster adopted the report and recommendation "as the opinion of the court" and entered a two page Memorandum and Order granting Lindsey and Coughanour's motion to remand the entire case.

The municipal defendants now seek in this court a writ of mandamus to compel Judge Lancaster to accept jurisdiction of this action, which, they contend, was properly removed under § 1441(a) and (b). They argue that by remanding the entire case under § 1441(c), Judge Lancaster exceeded his authority.


DISCUSSION

Preliminarily, it is clear that we have jurisdiction to review the district court's remand order. While appellate review of remands is somewhat restricted (see 28 U.S.C. § 1447(d);

<u>Aliota v. Graham</u>, 984 F.2d 1350, 1354-55 (3rd Cir. 1993)), this case, which was removed because it included a § 1983 civil rights claim brought under 28 U.S.C. §§ 1331 <u>and</u> 1343, falls within the specific exception to § 1447(d), which states that

> an order remanding a case to the State court from which it was removed pursuant to section 1443 ["civil rights cases"] of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d). Thus, Congress has demonstrated a special concern to preserve our power to review remand orders in civil rights cases.


A.   <u>Federal Jurisdiction Generally</u>.

Removal and remand issues must be considered in light of the general principles of federal subject matter jurisdiction. There are several sources for original jurisdiction in the federal courts: federal question jurisdiction of civil actions arising under the Constitution, laws, or treaties of the United States, 28 U.S.C. § 1331; diversity of citizenship jurisdiction of civil actions where the matter in controversy exceeds $50,000, and is between citizens of different states, 28 U.S.C. § 1332; and other specific jurisdictional statutes, such as RICO, 18 U.S.C. § 1962, <u>et</u>. <u>seq</u>.; Civil Rights Cases, 28 U.S.C. § 1443; ERISA, 29 U.S.C. § 1002, <u>et</u>. <u>seq</u>.; and FELA, 45 U.S.C. § 51-60.

> In addition,
> * * * in any civil action of which the district courts have original jurisdiction [except diversity cases], the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or

controversy under Article III of the United States Constitution.

28 U.S.C. § 1367.  Section 1367 also grants jurisdiction over claims that involve the joinder or intervention of additional parties, thereby codifying what had been dubbed "pendent-party" jurisdiction as well as some forms of "ancillary" jurisdiction. Thus § 1367 provides federal courts with statutory authority to hear some claims that lack an independent basis for federal subject matter jurisdiction.


B.   Removal Jurisdiction Generally.

Cases begun in state court over which a federal court may also have jurisdiction can be removed by the defendants under 28 U.S.C. § 1441 ("Actions removable generally").

Section 1441(a) reads in relevant part:

(a)  Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.  For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

Under (a), therefore, unless otherwise barred by Congress, any civil action brought in a state court (plaintiff's choice) over which a federal district court would have original jurisdiction may be removed by the defendant (defendant's choice) to a district court. This would include both federal question and diversity cases as well as the miscellaneous federal jurisdiction cases.

In the case now before us, Lindsey's and Coughanour's state court action included a claim under 42 U.S.C. § 1983, over which the federal court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, plus a variety of state law claims arising out of the same events and circumstances, over which the federal court has supplemental jurisdiction under § 1367. Because the district court had subject matter jurisdiction, the action was properly removed from state court under § 1441(a).

Under § 1441(b) diversity cases have an additional obstacle to removal: a resident defendant is barred from removing to federal court. If jurisdiction is based on a federal question, however, there is no residency restriction. This shows an added concern of Congress that cases such as this one -- civil rights claims raising federal questions -- should be permitted to be heard in federal courts.

## C. Application of § 1441(c).

The dispute on this mandamus application focuses on the effect of subdivision (c) of § 1441. That provision, prior to 1990, read:

> Whenever a separate and independent claim or cause of action, which would have been removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, remand all matters not otherwise within its original jurisdiction.

In 1990, Congress amended § 1441(c) in a manner which the parties contend affects our decision in this case. See Judicial Improvements Act of 1990, Pub. L. No. 101-650 § 312, 104 Stat. 5089, 5114 (1990). Section 1441(c) now reads:

> Whenever a separate and independent claim or cause of action within the jurisdiction of 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

In enacting the amendment to § 1441(c), Congress altered two provisions of the statute. First, it replaced the phrase "a separate and independent claim or cause of action, which would have been removable if sued upon alone" with "a separate and independent claim or cause of action within the jurisdiction of 1331 of this title". Second, it replaced the phrase "the district court may . . . remand all matters not otherwise in its original jurisdiction" with "the district court may . . . remand all matters in which State law predominates."

A fair reading of the Congressional intent in enacting the amendment to § 1441(c) is that it was designed to restrict removal to only those cases falling within the court's federal question jurisdiction and to bring the remand provisions into harmony with 28 U.S.C. § 1367, thereby possibly avoiding

piecemeal litigation.  See David D. Siegel, Commentary on 1988 and 1990 Revisions to Section 1441, 28 U.S.C.A. § 1441 (1994).

In the present case, the district court relied upon the addition which reads "the district court may . . . remand all matters in which State law predominates" to remand the entire case, including the § 1983 claim, to state court.  It did so without regard for the requirement, which the Congress left unchanged when it amended § 1441(c), that the federal cause of action removed by the municipal defendants had to be "separate and independent" from the state causes of action.

Thus, § 1441(c) provides for removal or remand only where the federal question claims are "separate and independent" from the state law claims with which they are joined in the complaint.  However, where there is a single injury to plaintiff for which relief is sought, arising from an interrelated series of events or transactions, there is no separate or independent claim or cause of action under § 1441(c).  American Fire & Casualty Co. v. Finn, 341 U.S. 6 (1951).  Suits involving pendent (now "supplemental") state claims that "derive from a common nucleus of operative fact", see United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966), do not fall within the scope of 1441(c), since pendent claims are not "separate and independent".  Carnegie-Mellon University v. Cohill, 484 U.S. 343, 354 (1988).

It is apparent, then, that "§ 1441(c) grants the district court only a limited authority to remand a case."  Kabealo v. Davis, 829 F. Supp. 923, 926 (S.D. Ohio 1993) (citing to Buchner v. F.D.I.C., 981 F.2d 816 (5th Cir. 1993)).  In Kabealo, the

plaintiff had brought a federal claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, et. seq, along with state law claims of engaging in a pattern of corrupt activity under Ohio law, breach of fiduciary duty, breach of contract, and fraud.  Defendant filed a notice of removal, and the plaintiffs moved for remand under 28 U.S.C. § 1441(c).  The district court of Ohio concluded that some cases had analyzed § 1441(c) too broadly, and held, as petitioners have argued here, that:

> Even if it is assumed that § 1441(c) would authorize the remand of an entire case, including federal claims, plaintiff must establish that remand of this case would be appropriate under 1441(c).  That  section provides for removal or remand only where the federal claims are "separate and independent" from the state law claims with which they are joined in the complaint [citing authorities].  Where there is a single injury to plaintiff for which relief is sought, arising from an interrelated series of events or transactions, there is no separate and independent claim or cause of action under 1441(c).  American Fire & Casualty Co. v. Finn, 341 U.S. 6 (1951).  The use of different counts to plead different legal theories or multiple theories of recovery does not automatically make those counts separate and independent.

Kabealo, 829 F. Supp. at 926.  The court then found that because the plaintiff in that case relied on the same set of facts for all counts of the complaint, including the RICO count, § 1441(c) did not authorize remand, because the federal claims were not separate and independent under that section.

Kabealo, drawing heavily upon Buchner, stands alone among the district courts in having reached the same conclusion as Buchner reached and as we reach here.  Other district courts have

apparently read the 1990 amendments as broadening rather than narrowing the scope of their discretion to remand. We cannot agree.

For instance, in Moore v. DeBiase, 766 F. Supp. 1311 (D.N.J. 1991), the complaint presented allegations similar to the allegations found in the present case. Moore had accused DeBiase, a police supervisor, of malicious abuse of authority, abuse of police procedure, a conspiracy to terminate Moore, defamation, and violation of § 1983 by depriving him of his "rights, privileges, and immunities secured by the United States Constitution and New Jersey Law." Id. at 1314. Moore also sought damages against the Borough of Dunnellen and the Dunnellen Police Department under conspiracy and respondeat superior theories. Id.

Without determining that Moore's § 1983 claim was "separate and independent" from his state law claims, the district court remanded all of Moore's claims, including his § 1983 claim. It did so in the belief that the phrase "all matters in which State law predominates" in § 1441(c) permits the remand of even federal claims within the district court's original federal jurisdiction if, in the discretion of the district court, state law predominated in the action as a whole.

As we have pointed out, however, unless the federal question claims removed by the defendant were "separate and independent" from the state law claims, § 1441(c) cannot apply and the district court must retain the federal claim. Hence, the district court's discretion to remand under § 1441(c) can pertain

only to those <u>state law claims</u> which the district court could decline to hear under 28 U.S.C. § 1367. (<u>See</u> Section 4 <u>infra</u> "Application of § 1367(c)"). Thus, we reject the reasoning of <u>Moore v. DeBiase</u> and those courts which have adopted its rationale. <u>See</u>, <u>e.g.</u> <u>Holland v. World Omni Leasing, Inc.</u>, 764 F. Supp. 1441 (N.D. Ala. 1991); <u>Martin v. Drummond Coal Co., Inc.</u>, 756 F. Supp. 524 (N.D. Ala. 1991).

Similarly in the present case, Lindsey and Coughanour rely on the same series of events for all counts of their complaint, including the federal § 1983 count; therefore, the federal claim is not separate and independent under 1441(c), and the district court had no authority to remand the case under that section.

### D. <u>Application of § 1367(c)</u>.

The plaintiffs insist that, even if the district court was not authorized to remand this entire case under § 1441(c), its action should be sustained under the authority of 28 U.S.C. § 1367(c) which gives a district court discretion to decline to hear certain state claims it would have supplemental jurisdiction to entertain under § 1367(a). We disagree for two reasons. First, nothing in § 1367(c) authorizes a district court to decline to entertain a claim over which is has original jurisdiction and, accordingly, that section clearly does not sanction the district court's remand of this entire case, including the civil rights claims, to the state court.

Further, § 1367(c) cannot legitimately be invoked to affirm even the district court's remand of the state claims to the state

court.  While we agree with plaintiffs that the discretion bestowed by § 1367(c) exists with respect to removed claims as well as claims filed initially in the district court, it is apparent that the district court has not exercised that discretion in this case.  The magistrate judge's opinion, adopted by the district court, refers only to § 1441(c) and it is apparent from that opinion that the court remanded the entire case based solely on the authority of that section.  Moreover, the result of an exercise of discretion under § 1367(c) in circumstances like those before the district court would have been two parallel proceedings, one in federal court and one in the state system, and a district court cannot properly exercise its discretion under § 1367(c) without taking that fact into account.  The district court's § 1441(c) analysis accordingly cannot serve as a surrogate for a § 1367(c) analysis that was not conducted.

As we have indicated, § 1367(c) is potentially applicable in a removed case involving federal claims and state claims over which the district court has supplemental jurisdiction.  A district court may thus be called upon to exercise its discretion at any time during the course of such a proceeding in light of the circumstances that then exist.  Gibbs, 383 U.S. at 727.  Because the district court in this case may hereafter be called upon to exercise its discretion under § 1367(c), we offer the following guidance.

Subsection (a) of § 1367 directs that "in any civil action of which the district courts have original jurisdiction, the

district courts shall have supplemental jurisdiction over all other claims that are so related to [the original jurisdiction claims] that they form part of the same case or controversy." Subsection (c) goes on to describe four categories of such claims which the district courts may nevertheless decline to adjudicate:

     (c)  The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --

          (1) the claim raises a novel or complex issue of State law,

          (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

          (3) the district court has dismissed all claims over which it has original jurisdiction, or

          (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

     While § 1367(c) does not specify what disposition the district court is to make of state claims it decides not to hear, based on the teachings of Carnegie-Mellon, 484 U.S. at 343, we believe that in a case that has been removed from a state court, a remand to that court is a viable alternative to a dismissal without prejudice.  See Balazik v. County of Dauphin, No. 94-7350, slip op. at 15-17 (3d. Cir. January 5, 1995).

     Section 1367(a)'s grant of "supplemental" jurisdiction was intended to broaden the preexisting scope of what had previously been termed "pendent" jurisdiction to include claims involving the addition of parties.  H.R. Rep. No. 416, 101st Cong., 2d

Sess. 29 (1990), <u>reprinted in</u> 1990 U.S.C.C.A.N. 6802, 6875.

Section 1367(c), on the other hand, was intended simply to codify the preexisting pendent jurisdiction law, enunciated in <u>Gibbs</u> and its progeny, concerning those instances in which a district court is authorized to decline to hear a state claim it would have the power to hear because of its relationship to an original federal jurisdiction claim. H.R. Rep. No. 416, 1990 U.S.C.C.A.N. at 6875 (Subsection 1367(c) "codifies the factors that the Supreme Court has recognized as providing legitimate bases upon which a district court may decline jurisdiction over a supplemental claim, even though it is empowered to hear the claim."). It is of particular importance in the present context to note that the "substantially predominates" standard found in § 1367(c)(2) comes directly from the Supreme Court's opinion in <u>Gibbs</u> and should be understood in that context. The Court there explained the doctrine of pendent jurisdiction as follows:

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of juridical economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed

without prejudice and left for resolution to state tribunals.

* * * *

[Even after the pretrial process has been completed and trial commenced,] recognition of a federal court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case. Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed.

Gibbs, 383 U.S. at 726-27 (footnotes omitted).

Under Gibbs jurisprudence, where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so. Lovell Mfg. v. Export-Import Bank of the United States, 843 F.2d 725 (3d Cir. 1988); Growth Horizons, Inc. v. Delaware County, 983 F.2d 1277 (3d Cir. 1993). Where the original federal jurisdiction claim is proceeding to trial, however, such considerations will normally counsel an exercise of district court jurisdiction over state claims based on the same nucleus of operative facts unless the district court can point to some substantial countervailing consideration. This is the teaching of our opinion in Sparks v. Hershey, 661 F.2d 30 (3d Cir. 1981), where the complaint asserted a civil rights claim under § 1983, a state wrongful death claim, and a state survival

act claim, all based on the same jailhouse suicide.  We there

observed:
>
> We do not hold that where there is a common nucleus of
> operative facts, state claims must always be appended
> to the federal claim; but where, as here, the district
> court does not set forth a persuasive, reasoned
> elaboration for dismissing the state claims, we are
> inclined to believe that the dictates of "judicial
> economy, convenience, fairness to the parties, and
> comity" . . . are better served by recognizing pendent
> jurisdiction.  This is especially true where it is
> desirable to avoid the possibility of duplicating the
> recovery of damages.  Here it is preferable for a
> single fact finder, under proper instruction from the
> court, to consider the varying elements of damages
> recoverable under the federal § 1983 claim and the
> state wrongful death and survival actions . . . .  We
> will therefore reverse the district court's order
> dismissing the pending state claims and direct that
> court to exercise jurisdiction over them.

Sparks, 661 F.2d at 33-34 (citations omitted).

Plaintiffs do not suggest that subparagraphs (1), (3), or

(4) of § 1367(c) are applicable here.  They do maintain that

their state claims substantially predominate over their federal

claims and, accordingly, that this case falls within subparagraph

(2).  The district court is in a better position than we to pass

upon this contention.  Moreover, even if § 1367(c) does not

authorize a refusal to hear the state claims based on the current

record, it might provide that authority at some later stage in

the proceeding.  Accordingly, the following observations

concerning § 1367(c)(2) are offered solely by way of guidance and

are not intended to foreclose the district court from hereafter

exercising its discretion under § 1367(c) upon appropriate

application.

As we have noted, the "substantially predominates" standard of § 1367(c)(2) comes from Gibbs.  It is important to recognize that this standard was fashioned as a limited exception to the operation of the doctrine of pendent jurisdiction -- a doctrine that seeks to promote judicial economy, convenience, and fairness to litigants by litigating in one case all claims that arise out of the same nucleus of operative fact.  When a district court exercises its discretion not to hear state claims under § 1367(c)(2), the advantages of a single suit are lost.  For that reason, § 1367(c)(2)'s authority should be invoked only where there is an important countervailing interest to be served by relegating state claims to the state court.  This will normally be the case only where "a state claim constitutes the real body of a case, to which the federal claim is only an appendage," Gibbs, 383 U.S. at 727 -- only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.

Given the origin of the "substantially predominate" standard, a district court's analysis under § 1367(c)(2) should track the Supreme Court's explication of that standard in Gibbs. We do not understand plaintiffs to suggest that there is a substantial quantity of evidence supporting their state claims that would not be relevant to the federal claims that the defendants, acting under color of state law, conspired to violate plaintiffs' constitutional rights by assaulting, wrongfully arresting, and maliciously prosecuting them.  Thus, in the terminology of Gibbs, the state issues would not appear to

"substantially predominate . . . in terms of proof."  383 U.S. at 726.  Nor would they appear to "substantially predominate . . . in terms of . . . the comprehensiveness of the remedy sought." Id.  The remedy sought based on the state claims is the same remedy sought based on the federal claims -- damages for the same set of injuries to the plaintiffs.  As we observed in Sparks, 661 F.2d at 33-34, the difficulty of avoiding duplicative recoveries is a factor tending to weigh against litigating related federal and state claims in different fora.

This leaves the issue of whether the state claims can be said to "substantially predominate . . . in terms of . . . the scope of the issues raised."  Id.  It is true that the state claims here outnumber the federal claims.  The "substantially predominate" standard, however, is not satisfied simply by a numerical count of the state and federal claims the plaintiff has chosen to assert on the basis of the same set of facts.  An analysis more sensitive to the relevant interests is required.

While federal constitutional tort law under § 1983 derives much of its content from the general common law of torts, plaintiffs' civil rights claims based on the alleged assault, arrest, and prosecution are nevertheless governed exclusively by federal law.  Heck v. Humphrey, 114 S. Ct. 2364, 2370-71 (1994). While the claims based upon the arrest and the prosecution may require an inquiry into whether the defendants had probable cause to believe a crime had been committed and this may in part require some reference to the state criminal law, the probable cause issue and the other issues raised by these claims are

nevertheless issues of federal law and concern. E.g. id.; Rose v. Bartle, 871 F.2d 331 (3d Cir. 1989); Lee v. Mihalich, 847 F.2d 66 (3d Cir. 1988); Losch v. Borough of Parkesburg, 736 F.2d 903 (3d Cir. 1984).

There are, to be sure, a complementary set of state law issues arising out of the state claims based on the alleged assault, arrest, and prosecution. But these state issues do not appear from our vantage point to substantially predominate over the comparable but distinct federal issues. Plaintiffs do not suggest that these state issues are more important, more complex, more time consuming to resolve, or in any other way more significant than their federal counterparts.

The only other state issues are those which may arise from the plaintiffs' negligence claims against the municipal defendants and the DeBartolo defendants. The dimensions of those claims are not clear at this stage of the case, but it seems unlikely to us that they will cause the state issues to "substantially predominate" within the meaning of § 1367(c)(2). If the factual allegations of the complaint are accepted at face value, as we are required to do at this point, this case involves several substantial claims that the plaintiffs' constitutional rights have been infringed. In such circumstances, we believe it will be the rare case, at least, where the addition of straightforward negligence claims based on the same facts as the constitutional claims will cause the state issues to substantially predominate.

In short, while we do not foreclose the parties from hereafter arguing, and the district court from hereafter considering, the issue posed by § 1367(c)(2), we think it unlikely that either will be able to point to a countervailing interest that would justify bifurcating this case into a federal and a state suit that will essentially duplicate each other.

## SUMMARY AND CONCLUSION

The district court had subject matter jurisdiction over the 1983 claim and supplemental jurisdiction over the other claims, which arose out of the same incidents and addressed the same course of conduct by the defendants; therefore, the federal and nonfederal claims were not "separate and independent", and the district court had no authority under § 1441(c) to remand either part or all of the case.

Accordingly, the petition for a writ of mandamus is granted.