**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 20-1724

———————

SERGIO VERDU,

Appellant

v.

THE TRUSTEES OF PRINCETON UNIVERSITY;
THE BOARD OF TRUSTEES OF PRINCETON UNIVERSITY;
CHRISTOPHER L. EISGRUBER; DEBORAH A. PRENTICE;
REGAN CROTTY; TONI MARLENE TURANO; LISA M. SCHREYER;
MICHELE MINTER; CLAIRE GMACHL; CHERI BURGESS;
LYNN WILLIAM ENQUIST; SUSAN TUFTS FISKE;
CAROLINA MANGONE; HARVEY S. ROSEN; IRENE V. SMALL

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-19-cv-12484)
District Judge: Honorable Freda L. Wolfson

———————

Submitted under Third Circuit LAR 34.1(a)
On June 24, 2021

Before: CHAGARES, *Chief Judge*, PORTER and ROTH, *Circuit Judges*

(Opinion filed:  September 27, 2022)

---

OPINION[*]

---

**ROTH**, *Circuit Judge*.

Sergio Verdu served as a tenured professor in the electrical-engineering

department at Princeton University before his termination in 2018.  Verdu asserts that

Princeton and its agents (collectively, Princeton) violated his rights when it terminated

him, so he filed a complaint in the District Court asserting violations of Title IX and of

Title VII and state-law claims.  Princeton moved to dismiss the complaint, and the

District Court granted the motion.  In doing so, the District Court ruled that Verdu failed

to state a plausible claim for relief under either Title IX or Title VII.  The District Court

then declined to exercise supplemental jurisdiction over Verdu's state-law claims.

Finding no error, we will affirm the order of the District Court.

I.[1]

Verdu taught at Princeton for nearly thirty-five years.  In April 2017, Yeohee Im, a

graduate student at Princeton, reported Verdu for sexual harassment.  Princeton

investigated the charge and determined that Verdu had violated Princeton's sexual-

misconduct policy.  Princeton disciplined Verdu by putting him on probation for a year.

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

[1] These facts are taken from the complaint and treated as true because, in reviewing a denial of a motion under Federal Rule of Civil Procedure 12(b)(6), we accept as true all well-pleaded allegations and construe the complaints in the light most favorable to the plaintiff. *See Lewis v. Atlas Van Lines, Inc.,* 542 F.3d 403, 405 (3d Cir. 2008).

According to Verdu, Im did not believe that Princeton punished Verdu sufficiently. That feeling was enhanced by Im's relationship with Paul Cuff, a former assistant professor at Princeton who held a grudge against Verdu. When Princeton denied Cuff tenure, Cuff blamed Verdu. Verdu believed that Cuff then influenced Im to engage in a public-pressure campaign against Verdu.[2] Im's campaign led to calls for Verdu's termination.

In September 2017, Princeton launched a second investigation into Verdu. The second investigation involved an alleged romantic relationship between Verdu and another Princeton graduate student, E.S., a student whose graduate dissertation Verdu had evaluated. According to Verdu, the second investigation was caused, at least in part, by Im's efforts to find evidence about the relationship between Verdu and E.S. At first, Verdu and E.S. denied that they had had any romantic relationship, Princeton, however, ultimately concluded that Verdu and E.S. engaged in an impermissible romantic relationship while Verdu evaluated her dissertation. Verdu later admitted that he and E.S. did engage in a romantic relationship during that period. As punishment, Princeton's president recommended that Verdu be fired. The president based his recommendation on the fact that Verdu had lied during the investigation.

Verdu asserts that both investigations involved discrimination against him because of his sex. He claims that Princeton's investigations were defective because of alleged

---

[2] Verdu alleges that Im violated numerous policies and rules at Princeton when she executed her alleged public-pressure campaign.

procedural anomalies, Im's public-pressure campaign, and other public pressures on Princeton to more rigorously investigate and punish any on-campus sexual misconduct.

Verdu sued Princeton in the District Court. The court dismissed his suit because Verdu failed to plausibly allege his federal-law claims. Verdu's appeal is now before us.

## II.

The District Court had subject-matter jurisdiction over Verdu's federal claims under 28 U.S.C. § 1331. Although the District Court dismissed Verdu's complaint without prejudice, Verdu stood on his complaint by filing his appeal and by making certain representations in his appellate briefing. "Although generally a plaintiff who decides to stand on the complaint does so in the district court[,] . . . we have made clear that such a course, while preferable, is not always necessary."[3] When a plaintiff "declare[s] [his] intention to stand on [his] complaint in this [C]ourt[,] . . . we thereafter treat[ ] the district court's order dismissing the complaint, albeit without prejudice, as a final order dismissing with prejudice . . . ."[4] Verdu unequivocally stated his intention to stand on his complaint in his briefing before us.[5] Thus, we have appellate jurisdiction

---

[3] *Remick v. Manfredy*, 238 F.3d 248, 254 (3d Cir. 2001).

[4] *Id.* (citing *Semerenko v. Cendant Corp.*, 223 F.3d 165, 172–73 (3d Cir. 2000)); *see also Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 398 (3d Cir. 2004) ("At oral argument [before us], counsel for the Hospital declared the Hospital's intention to . . . stand on its complaint. Counsel's declaration is sufficient to render the District Court's order final and appealable.").

[5] *See, e.g.*, Appellant's Opening Br. at 21–22. Princeton does not contest whether Verdu has clearly stood on his complaint; nor does it contest our appellate jurisdiction.

under 28 U.S.C. § 1291.  We review de novo an order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[6]

### III.

Verdu's first contention is that the District Court erred when it dismissed his claims for relief under Title IX of the Education Amendments of 1972.  Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[7]  In *Doe v. University of the Sciences*,[8] we adopted a "straightforward pleading standard" and held "that, to state a claim under Title IX, the alleged facts, if true, must support a plausible inference that a federally-funded college or university discriminated against a person on the basis of sex."[9]  Plaintiffs, of course, remain "free to characterize their claims however they wish."[10]

In his complaint, Verdu states three theories under which Princeton discriminated against him:  erroneous outcome, selective enforcement, and retaliation.

1.      *Erroneous Outcome.*  Verdu claims that Princeton discriminated against him based on his sex by reaching the incorrect conclusion both times that it investigated him.

---

[6] *See, e.g.*, *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 n.2 (3d Cir. 2016).
[7] 20 U.S.C. § 1681(a).
[8] 961 F.3d 203 (3d Cir. 2020).  We reaffirmed that pleading standard more recently in *Doe v. Princeton University*, 30 F.4th 335, 343 (3d Cir. 2022).
[9] *Univ. of the Scis.*, 961 F.3d at 209.
[10] *Id.*

As for the first investigation, Verdu attempts to show that Princeton discriminated against him based on his sex when it investigated and disciplined him based on (1) generalized archaic stereotypes about the sexes, (2) the history of complaints to the Department of Education's Office for Civil Rights about Princeton's purported failure to respond adequately to allegations of sexual misconduct advanced by female students and the resulting pressure on Princeton to remedy that perception, and (3) the fact that three female graduate students studying in a *different* department at Princeton left abruptly and, as a result, Princeton held a townhall meeting concerning systematic and long-term sexual harassment within *that* department.

The District Court correctly found that, based on those allegations, Verdu had failed to state a plausible claim that, because of his sex, Princeton investigated and sanctioned him. Verdu's allegations simply reflect the pressure on Princeton to enforce its sexual-misconduct policy. These allegations alone are not enough to state a plausible claim against Princeton under Title IX.[11]

As for Princeton's second investigation of Verdu, the District Court found that Verdu's erroneous-outcome theory could not survive a motion to dismiss because he failed to sufficiently plead his innocence. As we explained in *University of the Sciences*, we have a standard based on the text of Title IX itself: "the alleged facts, if true, must

---

[11] *Id.* at 210 ("Like our colleagues on the Sixth and Seventh Circuits, we . . . recognize that allegations about pressure from [the Department of Education] and the 2011 Dear Colleague Letter cannot alone support a plausible claim of Title IX sex discrimination." (citations omitted)).

support a plausible inference that a federally-funded college or university discriminated against a person on the basis of sex."[12]  Verdu failed to satisfy that standard.

On appeal, Verdu contends that his complaint alleges that the second investigation suffered from sex bias because of a purported lack of evidence of sexual misconduct, Princeton's decision to press the investigation despite E.S. not wanting one to occur, procedural irregularities in the investigation, and a variety of public pressures placed on Princeton.  However, the District Court found that, in his own complaint, Verdu acknowledged that he violated Princeton's policies:  "Plaintiff alleges in the [c]omplaint that he and E.S. commenced a relationship in Spring 2014, that the relationship was ongoing during the period when Plaintiff evaluated E.S.'s dissertation, and that [Princeton's] rules at the time prohibited 'sexual or romantic relation[s] involv[ing] individuals in a teacher-student relationship.'"[13]  Verdu's admission of guilt undercuts the strength of his allegations that Princeton investigated him because of his sex.  As a result, Verdu's allegations concerning the second investigation also fall short.

2.     *Selective Enforcement*.  Verdu claims that both the first and second investigation suffered from sex bias because Princeton selectively enforced its policies against him.  He is wrong.  As for the first investigation, Verdu claims that Princeton discriminated against him based on his sex because (1) on information and belief, females are purportedly investigated less frequently than males, (2) on information and belief, females are punished less severely than males, and (3) Princeton treated his accuser, Im,

---

[12] *Id.* at 209.
[13] App. 15 (cleaned up); *see also* Compl. ¶¶ 229, 235, 298(h).

differently than it treated him during the first investigation. As for the allegations about how females and males are generally treated differently, those allegations are too abstract to support a claim of sex bias under Title IX.[14] In addition, the purported differences in how Princeton treated Verdu and Im are too conclusory to support a plausible claim for relief.[15]

As for the second investigation, Verdu asserts essentially the same arguments to support his selective-enforcement theory as he asserts to support his erroneous-outcome theory. For substantially the same reasons that we reject those arguments in support of his erroneous-outcome theory, we reject them in support of his selective-enforcement theory.

3. *Retaliation*. Verdu challenges the District Court's order dismissing his Title IX retaliation claim. To state a claim for retaliation under Title IX, the plaintiff must plausibly allege that he "engaged in activity protected by Title IX, that he "suffered an adverse action," and that "there was a causal connection between the two."[16] "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action."[17] A plaintiff alleging retaliation "need not prove the merits of the underlying

---

[14] *See Univ. of the Sciences*, 961 F.3d at 209–11.
[15] *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[16] *See, e.g.*, *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017) (cleaned up); *Moore v. City of Phila.*, 461 F.3d 331, 340–42 (3d Cir. 2006).
[17] *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).

discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed.'"[18]

The District Court found that, at a minimum, Verdu failed to allege that he engaged in activity protected by Title IX. As we explained earlier, Title IX protects against discrimination because of sex. In his complaint, Verdu alleges merely that he reported being subjected to a "hostile work environment" because of Im's pressure campaign.[19] Verdu's complaint never connects the purported "hostile work environment" and Im's public-pressure campaign to any purported sex-based discrimination. For that reason, Verdu's complaint does not include plausible allegations that Verdu's conduct of reporting the alleged "hostile work environment" is protected by Title IX.[20] Thus, the District Court correctly dismissed Verdu's retaliation claim.

IV.

Next, Verdu challenges the District Court's dismissal of his Title VII claims. Title VII makes it unlawful "for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions,

---

[18] *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) (quoting *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 468 (3d Cir.1993)).

[19] To be sure, the alleged "hostile work environment" is related to publicity surrounding Princeton's first Title IX investigation into him. However, that is not a sufficient connection by itself to show that the purported "hostile work environment" was caused by sex discrimination directed at Verdu.

[20] *See, e.g.*, *Twombly*, 550 U.S. at 570; *cf. Sitar v. Ind. DOT*, 344 F.3d 720, 727 (7th Cir. 2003) (holding that, in Title VII context, the plaintiff had not engaged in protected activity because she "complained only that she felt picked on, not that she was discriminated against 'because of' sex or gender, which is what Title VII requires").

or privileges of employment, *because of such individual's . . . sex*."[21] Verdu alleges that Princeton violated Title VII under two theories: one alleging disparate treatment and the other alleging a hostile work environment.

1. *Disparate Treatment.* To allege plausibly a disparate-treatment claim under Title VII, a plaintiff must allege that (1) he is a member of a protected class, (2) he is qualified for the position he sought to retain or attain, (3) he suffered an adverse employment action, and (4) the adverse action occurred under circumstances that may give rise to an inference of intentional discrimination.[22] The "central focus of the *prima facie* [Title VII] case is always whether the employer is treating some people less favorably than others because of their race, color, religion, *sex*, or national origin."[23] "The evidence most often used to establish . . . disparate treatment" involves "a plaintiff show[ing] that [he] was treated less favorably than similarly situated employees who are not in [his] protected class."[24]

The District Court found that Verdu failed to allege that he received different treatment by Princeton than a similarly situated female. He never identifies a female professor at Princeton as a comparator; at most, his complaint alleges that Im—a graduate student and his accuser—is a valid comparator. Although a plaintiff need not show an

---

[21] 42 U.S.C. § 2000e–2(a) (emphasis added).
[22] *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).
[23] *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) (emphasis added) (cleaned up).
[24] *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 366 (3d Cir. 2008); *see also Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998).

exact match between himself and the comparator, he must show a sufficient similarity.[25]

Verdu, a professor, and Im, a graduate student, hold unquestionably different roles and levels of authority at Princeton. Verdu has not alleged enough commonalities to show that they are sufficiently alike to be considered valid comparators. Although on appeal Verdu contends that one can infer that Princeton discriminated against him because of his sex, none of his allegations plausibly support that contention.[26] His disparate-treatment claim therefore must fail.

2.    *Hostile Work Environment.*  To allege a plausible hostile-work-environment claim under Title VII, a plaintiff must allege that (1) he suffered intentional discrimination based on his being a part of a protected class, (2) the discrimination was severe or pervasive; (3) the discrimination had a detrimental influence on the plaintiff; (4) the discrimination would have had a detrimental influence on a reasonable person in similar circumstances; and (5) respondeat-superior liability exists.[27]

The District Court found that Verdu failed to allege sufficiently the first element: whether any harassment that he suffered was motivated by sex discrimination. The District Court's analysis is correct. In his complaint, Verdu explains that Im's public-pressure campaign, along with other public pressures on Princeton concerning on-campus sexual harassment, led to Verdu facing public scrutiny from his colleagues and students

---

[25] *See, e.g.*, *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003) ("In the context of personnel actions, the relevant factors for determining whether employees are similarly situated often include the employees' supervisors, the standards that the employees had to meet, and the employees' conduct." (cleaned up)).

[26] *See supra* § 2.

[27] *See, e.g.*, *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

at Princeton. All of that, according to Verdu's complaint, caused him stress, anxiety, elevated blood pressure; all of it also allegedly led to a "hostile work environment" for Verdu.

However, Verdu never plausibly alleges that Im's pressure campaign and the "hostile work environment" that purportedly resulted from it were motivated by sex discrimination. If anything, Verdu alleges that Im launched her pressure campaign because she felt "[d]issatisfied with [the] sanction" of Verdu.[28] Additionally, his complaint makes much of Im's purported relationship with Professor Cuff. According to Verdu, Cuff "held a grudge against" him because Cuff blamed Verdu for his failure to obtain tenure.[29] Based on Im allegedly "[h]aving developed a close relationship with Cuff," she purportedly filed her grievances against Verdu based on Cuff's alleged encouragement.[30] Those allegations do not relate to sex discrimination; instead, they relate to a purported feud between Cuff and Im, on one hand, and Verdu, on the other. That is not enough to allege a plausible hostile-work-environment claim based on sex discrimination. "Many may suffer severe or pervasive harassment . . ., but if the reason for that harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief."[31] Thus, the District Court properly dismissed Verdu's hostile-work-environment claim under Title VII.

---

[28] Compl. ¶ 12.
[29] Compl. ¶ 4.
[30] Compl. ¶¶ 6–7.
[31] *See, e.g.*, *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

V.

The District Court properly dismissed the federal-law claims asserted in Verdu's complaint for failure to state a claim. We will affirm the District Court's order dismissing Verdu's complaint.[32]

---

[32] Having dismissed all federal-law claims and failing to find any other basis for subject-matter jurisdiction over Verdu's state-law claims, the District Court declined to exercise supplemental jurisdiction over the state-law claims. *See, e.g.*, *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (stating that, when "the claim[s] over which the district court has original jurisdiction [are] dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."). Verdu makes no contrary argument.