

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-30-1996

# Aman v. Cort Furniture

Precedential or Non-Precedential:

Docket 95-5142

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Aman v. Cort Furniture" (1996). *1996 Decisions*. Paper 185.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/185

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-5142
_____


CAROL AMAN; JEANETTE JOHNSON

Appellants,

vs.

CORT FURNITURE RENTAL CORPORATION

Appellee.


_____


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(D.C. Civil No. 93-cv-01344)

_____


ARGUED JANUARY 24, 1996

BEFORE:  STAPLETON, MANSMANN and LEWIS, Circuit Judges.

(Filed May 30, 1996)

_____

Ian Stuart
Daniel J. DeLuca (ARGUED)
510 White Horse Pike
Audobon, NJ  08106

        Attorneys for Appellants


Michael J. Vassalotti
Brown & Connery
360 Haddon Avenue

Post Office Box 539
Westmont, NJ  08108

Edward Katze
Constangy, Brooks & Smith
230 Peachtree Street
Suite 2400
Atlanta, GA  30303

Michael L. Blumenthal (ARGUED)
Suite 2400
230 Peachtree Street, N.W.
Atlanta, GA  30303

      Attorneys for Appellee

_____

OPINION OF THE COURT
_____


LEWIS, Circuit Judge.

      Carol Aman and Jeanette Johnson appeal from the district court's grant of summary judgment in favor of Cort Furniture Rental Corporation on their employment discrimination claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C.  2000e, et seq, and the New Jersey Law Against Discrimination, N.J. Stat. Ann. 10:5-12, et seq.  They argue that the record contains evidence from which a jury could conclude: (1) that while employed at Cort Furniture, they were subject to a hostile work environment; (2) that Aman was constructively discharged; (3) that Johnson was discharged in retaliation for protesting discrimination at Cort Furniture; and (4) that black employees were paid less than similarly situated white employees.

      For the reasons which follow, we will reverse the district court's grant of summary judgment as to Aman's and Johnson's hostile environment, constructive discharge and retaliatory discharge claims, and will affirm its judgment as to their unequal pay claims.

I.

      Carol Aman and Jeanette Johnson, both black, were hired by Cort Furniture's Philadelphia district office in 1986.  Aman was hired as a bookkeeper and Johnson was hired as a credit manager.  Both Aman and Johnson claim that during their employment at Cort Furniture, they were subjected to an atmosphere of racial contempt and harassment.  Aman claims that this resulted in her constructive discharge.  Johnson claims that she was discharged in retaliation for complaining about Cort Furniture's discriminatory practices.

      From 1986 through the termination of their employment in 1992, Aman and Johnson claim that co-workers and managers engaged in a pervasive and systematic pattern of harassment

toward black employees.  Aman and other black employees were referred to as "another one," "one of them," and "poor people." Aman was also the target of at least three false accusations of favoritism allegedly exhibited toward her by her black supervisor, as well as dereliction of duty.  On several occasions, co-workers physically snatched documents from Aman's hands and stole time cards that she needed to perform her job.

This behavior, however, was not limited to Aman and Johnson's co-workers; it was engaged in by management as well. For example, both Aman and Johnson heard Allen Shuttleworth, Regional Vice-President of Cort Furniture, make disparaging racial remarks about their supervisor, Joyce Lampkin.  On one occasion, Shuttleworth came into the office and asked the white employees on Lampkin's staff, "Where is that one in there?"

Despite this harassment, in 1989 Aman was promoted to the position of credit manager, and Johnson became supervisor of the administrative department after Lampkin moved to the sales department.  As a credit manager Aman was responsible for approving credit and collecting on past due accounts.  Cort Furniture salespeople were required to submit credit applications to a credit clerk, who would run a credit check in order to determine whether to grant credit to the customer.  After these promotions, Johnson became Aman's immediate supervisor.  In November of that year, Johnson received a letter from the president of Cort Furniture congratulating her for her outstanding performance and for the performance of the department.

Aman's new position as credit manager did nothing to increase the respect of her fellow employees.  She continued to suffer harassment from white sales staff and management, including Karen Brady, Lisa Jentsch, Katie Gauthier, Laura Greathead, Chris Benzle, Robert Kurtz, and Barry Boswell. According to Aman, the general atmosphere of racial hostility "lead [sic] white employees to feel confident that what they said would be listened to over black and made the whites uncooperative and unsupportive to blacks."  As examples, Aman and Johnson point to the fact that Benzle instructed Johnson to put a derogatory memorandum in Aman's personnel file because he wanted Aman "out." Brady, Jentsch, and Greathead bypassed Aman and extended credit to customers against Cort Furniture policy, and there is no evidence that any of them were reprimanded for their behavior. In addition, Boswell, the sales manager, continually ignored Aman's requests for information necessary to her job.  He also allegedly harassed Aman and another black employee by making them do menial tasks which were not within their job descriptions, such as running his personal errands.  There is no evidence to indicate that he ever asked similarly situated white employees to do those tasks.

On one particular occasion, while Aman was using the restroom, Gauthier, a sales representative, demanded that Aman approve a credit application immediately.  Aman replied, "Katie, have you heard the latest, Lincoln freed slaves?"  In response to that remark Gauthier complained to Shuttleworth, who refused to speak to Aman from that day forward.  Shuttleworth then

approached Johnson and told her that "Aman has got to go." In response to this dispute, Jim Newton, the controller, called Johnson and stated that "if this continues we're going to have to come up there and get rid of all of you." When Johnson asked what he meant by "all of you," Newton refused to elaborate. During this conversation, Johnson informed Newton that the racial problems at Cort Furniture were getting out of control.

In meetings with Boswell and Kurtz, Johnson informed Cort Furniture's management that salespeople were harassing and insulting black warehouse employees by constantly telling them "Don't touch anything" in customers' homes and "Don't steal." Johnson also asked why black employees were being paid less than white employees, but was told only that that was a Human Resources Department issue.

When Kurtz became general manager in June of 1991, the harassment apparently increased. Kurtz began to yell at Aman on a regular basis. When he met with Aman for the first time as general manager, Kurtz told her that he "knew all about" Aman, Jeanette Johnson, and Bruce Buchanan. The only thing these three employees had in common was that they were black. Until Aman departed, Kurtz subjected her to careful scrutiny whenever she interacted with white female employees.

Johnson was also the focus of Kurtz's harassment. According to Johnson, Kurtz made it known that he had offered her job to a white employee. Kurtz then made it more difficult for her to perform her job by withholding necessary financial information. On one occasion, as a result of conflicting instructions from Kurtz and Newton, Newton apparently slammed Johnson's door and yelled at her. While he later apologized, Newton admitted that he never treated anyone else in the same manner.

During August of 1991, the racial problems at Cort Furniture appeared to be coming to a head. Kurtz received a letter of complaint about Aman from Stephen Urbish, a customer of Cort Furniture. After another incident between Kurtz and Aman in which Kurtz yelled at her in front of the entire office, he refused to discuss business matters with Aman, and instead informed her that he was receiving complaints about her.

On October 10, 1991, Kurtz forced Johnson to issue a formal warning to Aman, despite Johnson's objection. Although the warning stated that customers had complained about Aman, Johnson could recall but a single complaint, one in which a customer complained that he did not appreciate being called and told that he owed money. Later, Johnson was instructed to give Aman a work plan which required Johnson to spend two hours everyday monitoring Aman. Johnson informed Cort Furniture that it was her opinion that the work plan was unnecessary, but was forced to comply in order to keep her job.

On October 18, 1991, Aman's counsel sent a letter to Cort Furniture complaining of discrimination against Aman. Later that month in a district meeting attended by all administrative, sales and warehouse employees, Kurtz allegedly stated that "the blacks are against the whites," and that if anyone didn't like it at Cort Furniture, they could leave.

In January of 1992, Kurtz once again became angry with Aman, this time for not granting credit approval for a project which would have contradicted prior instructions she had received. In February, Aman resigned after giving four days notice, and filed a charge of discrimination with the EEOC. Aman testified that the hostile environment in which she worked had forced her to see a doctor for nervousness three times in 1991 and once in 1992.

Johnson also observed the discriminatory treatment of other black employees. Johnson testified that every time she hired a black person at Cort Furniture, there were complaints from salespeople and general managers about that person's performance. In addition, in 1991 she personally witnessed the firing of James Washington, a black warehouse employee, who was terminated for accepting a tip from a customer, while on the same day a white warehouse employee failed his third drug test but was kept on in violation of company policy. In 1992, Johnson was forced to terminate Robin Flagg, a black customer service representative. According to Johnson, Flagg's only offense was that she had not received the training from Cort Furniture which would have enabled her properly to do her job. Also in 1992, Johnson was forced to terminate a black warehouseman for too many accidents, even though at least one other white warehouseman with as many accidents was not fired.

After Aman resigned, Kurtz told Johnson to "hire an Italian, they won't take no for an answer." She was also instructed by members of management, including Tom Rogers and Regional Vice-President Shuttleworth, to gather as much derogatory information about Aman as she could. Johnson informed them that all relevant information was already in Aman's personnel file, but management persisted. Johnson was told that Aman had filed a complaint with the EEOC, and they needed this information in order to prevail.

In response to Aman's discrimination charge, Cort Furniture required the depositions of several employees, including Johnson. Shuttleworth telephoned Johnson on August 7, 1992, and asked her to give a statement the following week. When Johnson informed him that she would be on vacation until the 17th, he said that they would get in touch with her when she returned. On Sunday, August 16th, the day before Johnson was supposed to return to work following her vacation, Shuttleworth called Johnson at her home at 9:30 p.m. and informed her that she was scheduled for a deposition the following afternoon. According to Johnson, this was the first time anyone ever mentioned the term "deposition" to her.

The next morning, Johnson telephoned Human Resources and eventually spoke with Kim Martin, an employee in the department. Johnson informed Martin that she wanted to speak to her attorney and to other people in Human Resources before she proceeded with the deposition. Martin responded that Johnson's proposal was acceptable, as long as she realized Cort Furniture would still want her to give a deposition. Johnson replied that she did not have a problem with giving a deposition once she knew what her rights were. After missing her scheduled deposition,

Johnson was fired. Johnson was advised that she had been terminated because her failure to attend the deposition proved "that you are not loyal to this company."

Aman and Johnson filed this suit against Cort Furniture alleging racial discrimination in violation of Title VII and the New Jersey Law Against Discrimination. They alleged that Cort Furniture created a racially hostile work environment, paid blacks less than whites, constructively discharged Aman, and fired Johnson in retaliation for protesting discriminatory practices. Cort Furniture moved for summary judgment on the Title VII claims, and the district court granted Cort Furniture's motion. The court found that Aman and Johnson had failed to establish a claim of hostile environment because the evidence demonstrated only rudeness, and not racial animus; that they had failed to demonstrate that they were paid less than similarly situated white employees; that Aman had failed to demonstrate that a reasonable person would have resigned; and that Johnson had failed to present any evidence to demonstrate that she was fired for participating in protected activity. The district court then dismissed Aman and Johnson's state claims with prejudice. This appeal followed.

II.

We have held repeatedly that the party moving for summary judgment under Fed. R. Civ. P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987). This burden remains with "the moving party regardless of which party would have the burden of persuasion at trial." Chipollini, 814 F.2d at 896.

As we noted at the outset (and as our factual recitation in Part I of this opinion would indicate), when determining whether the moving party has proven the absence of a genuine material issue of fact, the facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true, Scott v. Plante, 532 F.2d 939 (3d Cir. 1976); and "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita, 475 U.S. at 587 (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)) (emphasis added); Celotex, 477 U.S. at 330 n.2 ("any doubt as to the existence of a genuine issue for trial should be resolved against the moving party."). Viewed under this lens, "[i]f . . . there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment . . . ." Celotex, 477 U.S. at 330 n.2 (quoting In re Japanese Electronic Products Antitrust Litigation, 723 F.2d 238, 258 (1983), reversed on other grounds sub nom. Matsushita, 475 U.S. 574 (1986)).

A district court's grant of summary judgment is subject to plenary review, Public Interest Research of N.J. v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 71 (3d Cir. 1990), and we are required "to apply the same test the district court should

have utilized initially."  Goodman v. Mead Johnson & Co., 534 F.2d 566 (3d Cir. 1976); see also Berner Int'l Corp. v. Mars Sales Co., 987 F.2d 975 (3d Cir. 1993); and J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1530 (3d Cir. 1990).

On summary judgment, Cort Furniture does not challenge the factual basis of Aman and Johnson's supporting evidence, but claims instead that even if their evidence is true, it would be insufficient to establish impermissible employment practices under Title VII.  Cort Furniture is, therefore, required to demonstrate that there is no evidence in the record upon which any reasonable jury could conclude that discrimination occurred. For the following reasons, we conclude that Cort Furniture failed to carry its burden.

### III.  Title VII Claims
#### A.  Hostile Environment.

In order to establish a claim for employment discrimination due to an intimidating or offensive work environment, a plaintiff must establish, "by the totality of the circumstances, the existence of a hostile or abusive environment which is severe enough to affect the psychological stability of a minority employee."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990) (quoting Vance v. Southern Bell Tel. and Tel. Co., 863 F.2d 1503, 1510 (11th Cir. 1989)). Specifically, a plaintiff must show:  (1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability.  Id.; West Philadelphia Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995).  As the Supreme Court has emphasized:

> whether an environment is "hostile" or "abusive" can be determined only by looking at the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Harris v. Forklift Systems, Inc., 114 S. Ct. 367, 371, 126 L.Ed.2d 295, 302 (1993).

The issue in this case is whether the district court correctly determined that the plaintiffs failed to demonstrate that they suffered from intentional racial discrimination or that the discrimination was pervasive and regular.

In many respects, the facts of this case represent what has become the typical Title VII employment discrimination case of this decade.  Anti-discrimination laws and lawsuits have "educated" would-be violators such that extreme manifestations of discrimination are thankfully rare.  Though they still happen, the instances in which employers and employees openly use derogatory epithets to refer to fellow employees appear to be declining.  Regrettably, however, this in no way suggests that

discrimination based upon an individual's race, gender, or age is near an end.  Discrimination continues to pollute the social and economic mainstream of American life, and is often simply masked in more subtle forms.  It has become easier to coat various forms of discrimination with the appearance of propriety, or to ascribe some other less odious intention to what is in reality discriminatory behavior.  In other words, while discriminatory conduct persists, violators have learned not to leave the proverbial "smoking gun" behind.  As one court has recognized, "[d]efendants of even minimal sophistication will neither admit discriminatory animus or leave a paper trail demonstrating it." Riordan v. Kempiners, 831 F.2d 690, 697 (7th Cir. 1987).  But regardless of the form that discrimination takes, the impermissible impact remains the same, and the law's prohibition remains unchanged.  "Title VII tolerates no racial discrimination, subtle or otherwise."  McDonnell Douglas Corp. v. Green, 411 U.S. 793, 801 (1973).

The sophisticated would-be violator has made our job a little more difficult.  Courts today must be increasingly vigilant in their efforts to ensure that prohibited discrimination is not approved under the auspices of legitimate conduct, and "a plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled . . . because of crabbed notions of relevance or excessive mistrust of juries." Riordan, 831 F.2d at 698.

Considered in the light most favorable to them, Aman and Johnson have produced sufficient evidence so that a reasonable jury could conclude that the working environment at Cort Furniture was pervaded by discriminatory "intimidation, ridicule, and insult."  Harris, 114 S. Ct. at 370, 126 L.Ed.2d at 301.  The plaintiffs' evidence demonstrates that from 1986 through 1992, employees of Cort Furniture made inherently racist remarks.  Aman and Johnson were referred to as "another one," "one of them," "that one in there," and "all of you."  Other black employees were harassed on a daily basis by employees at Cort Furniture, who hurled insults such as "don't touch anything," and "don't steal."  Aman and Johnson were also subjected to apparently false accusations of favoritism, incompetence, and were made to do menial jobs.  The evidence of record shows that white employees were not treated in a similar fashion.  In addition, several employees refused to deal with Aman even in matters where she was directly responsible for approving a customer's credit, and these employees were never reprimanded even though their actions were in direct violation of company policy.

Cort Furniture argued, and the district court agreed, that any racial harassment ended in 1989 because by then many of the individuals who had made these remarks were no longer employed by Cort Furniture.  If that were true, then Aman and Johnson's claims based solely on those incidents would be time-barred.  But in addition to many other instances of abusive and harassing behavior, Aman and Johnson point to several particularly troubling comments made in 1991 by current management level employees.

First, in a discussion with Johnson, Jim Newton, the district controller, stated that if things were not resolved with Aman, "we're going to have to come up there and get rid of all of you." App. at 41. When asked whom he meant by "all of you," Newton refused to answer. Id. Second, Robert Kurtz, the general manager, after slamming his hand on Aman's desk, told her that he knew all about her and two other employees. The only factor the three shared in common was their race. Id. at 316. Third, in a district meeting attended by all administrative, sales, and warehouse employees, Kurtz stated that "the blacks are against the whites," and that if anyone did not like it at Cort Furniture, they could leave. Id. at 323.

The district court's conclusion that harassment ended in 1989 appears to be based upon a belief that these later comments were not racially motivated. Aman, slip op. at 12. In our view, however, the use of "code words" can, under circumstances such as we encounter here, violate Title VII. Indeed, a reasonable jury could conclude that the intent to discriminate is implicit in these comments. Cf. Andrews, 895 F.2d at 1482 n.3 ("The intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language is implicit, and thus should be recognized as a matter of course."). There are no talismanic expressions which must be invoked as a condition-precedent to the application of laws designed to protect against discrimination. The words themselves are only relevant for what they reveal -- the intent of the speaker. See Futrell v. J.I. Case, 38 F.3d 342, 347 (7th Cir. 1994) (holding that statements like "sharp young people" and that the employee was not a "forward enough thinker" could reasonably be interpreted as evidence of bias under the ADEA). A reasonable jury could find that statements like the ones allegedly made in this case send a clear message and carry the distinct tone of racial motivations and implications. They could be seen as conveying the message that members of a particular race are disfavored and that members of that race are, therefore, not full and equal members of the workplace. As we have held, the pervasive use of derogatory and insulting terms directed at members of a protected class generally, and addressed to those employees personally, may serve as evidence of a hostile environment. Andrews, 895 F.2d at 1485. Moreover, a reasonable jury could conclude that Kurtz's statement that "the blacks are against the whites" represents management's explicit recognition of a racially hostile environment at Cort Furniture.

In addition to those described above, Aman and Johnson testified to numerous other examples of harassment which, viewed in isolation, arguably may not have been motivated by racial animus. For example, Aman alleges that her time cards were stolen, making it harder for her to perform her job. Other employees physically snatched things from her. Aman was falsely accused of wrongdoing on at least two occasions. As discussed earlier, several employees, including a sales manager, ignored or refused to deal with Aman. Johnson was informed on several occasions that Aman "had to go." In addition, Kurtz yelled at

Aman on a daily basis, and there is conflicting evidence as to whether he yelled at any white employees at Cort Furniture. After Aman and Johnson began complaining about racial discrimination, employees were asked to keep complaint lists about Aman. Similarly, Kurtz withheld relevant financial information from Johnson and gave her orders that directly contradicted orders from the controller, Jim Newton, as well as company policy. In response to one of these occasions, Newton slammed the door to Johnson's office and yelled at her. Even though he apologized, he admitted that he had never behaved in this fashion toward anyone else.

In light of the suspicious remarks discussed above, a reasonable jury could interpret this behavior as part of a complex tapestry of discrimination when examined in conjunction with the comments made by Cort Furniture's employees and management. As we have said,

> A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario. . . . ` . . . What may appear to be a legitimate justification for a single incident of alleged harassment may look pretextual when viewed in the context of several other incidents.'

Id. at 1484 (quoting Vance v. Southern Bell Tel. and Tel Co., 863 F.2d 1503, 1510 (11th Cir. 1989)) (concluding that missing files, anonymous calls, and vandalism could be evidence of a hostile environment). We do not imply that such acts of harassment must be accompanied by racially discriminatory statements. Indeed, we have previously held that overt racial harassment is not necessary to establish a hostile environment. See Andrews, 895 F.2d at 1485. All that is required is a showing that race is a substantial factor in the harassment, and that if the plaintiff had been white she would not have been treated in the same manner. Id. We simply note that the harassment of black employees, when combined with the discriminatory statements made by other Cort Furniture employees, can be viewed as making the plaintiffs' racial discrimination claim all the more compelling. This is especially true given that a reasonable jury could conclude that Cort Furniture's management was not only aware of these acts and statements, but was also a source of the harassment and comments.

Viewed in the light most favorable to the non-moving parties, Aman and Johnson not only have established a prima faciecase of discrimination, but they have also provided sufficient evidence such that a reasonable jury could conclude that they were subject to intentional discrimination on a regular and pervasive basis. We conclude, therefore, that summary judgment as to Aman and Johnson's hostile environment claim should not have been granted.

### B. Constructive Discharge.

In order to establish a constructive discharge, a

plaintiff must show that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign."  Goss v. Exxon Office Systems Co., 747 F.2d 885, 888 (3d Cir. 1984).  In Goss, we upheld a finding of constructive discharge which stemmed from the reassignment of the plaintiff to a less lucrative territory based upon her sex.  In doing so, we found two factors to be particularly persuasive:  (1) the employee had lost confidence in herself and her employer; and (2) the reassignment represented a substantial cut in pay.  Id. at 888-89.  Similarly, in Levendos v. Stern Entertainment, Inc., 860 F.2d 1227, 1231 (3d Cir. 1988), we reversed a district court's grant of summary judgment on a claim of constructive discharge, stating:

> While we can imagine a maitre'd who might not object to exclusion from management meetings, denial of authority to order supplies, false accusations of stealing from and drinking on the job, and who might not be disturbed by rumors and remarks that she would be replaced by a male, her employer's refusal to talk with her, and to find wine bottles in her locker, we find that these events are clearly not trivial.

We held that a jury could ultimately decide that a reasonable person would be forced to quit.  Id.

With regard to Aman's constructive discharge claim, the district court held that:  (1) she had not put forth sufficient evidence to support a finding of racial discrimination; (2) the conditions could not have been intolerable as a matter of law because she remained in her job for approximately four months after claiming that they were intolerable; and (3) the specific events that prompted her departure were insufficient as a matter law.  Aman, slip op. at 16.  We will address each conclusion in turn.

Because we believe that Aman has provided sufficient evidence to support her claim of racial discrimination as discussed above, we will not repeat that discussion here.  Suffice it to say that courts have found constructive discharge based upon a continuous pattern of discriminatory treatment over a period of years, Nolan v. Cleland, 686 F.2d 806, 813 (9th Cir. 1982); Clark v. Marsh, 665 F.2d 1168 (D.C. Cir. 1981), and Aman has set forth sufficient facts so that a reasonable jury could conclude that her decision to leave was reasonable based upon the history of discriminatory treatment.

The district court's second and third conclusions must be addressed in tandem.  As an initial matter, we have rejected imposing an "aggravated circumstances" requirement upon constructive discharge claims.  Levendos, 860 F.2d at 1232 ("we cannot state as a broad proposition of law that a single non-trivial incident of discrimination can never be egregious enough to compel a reasonable person to resign.").  The fact that Aman had been subject to continuous discrimination during her employment could support a conclusion that she simply had had enough.  No other precipitating facts were legally required.

Even if we did require aggravating circumstances, the courts in Nolan and Clark both found that a history of discrimination constituted aggravating circumstances and we see no reason to disagree with that conclusion. Accordingly, the fact that Aman left four weeks after her attorney contacted Cort Furniture alleging intolerable conditions does not preclude a finding that a reasonable person would be compelled to resign under the circumstances. A jury could conclude that the conditions of her employment were intolerable, and that while she had the fortitude to stay, her strength finally failed.

Finally, there is evidence from which a jury could conclude that the circumstances of Aman's employment changed during those four months. When asked about the incidents prompting her decision to leave, Aman answered:

> I believe being called in and told that I had
> to be written up, this was after I tried to
> cooperate with the work plan that had been
> given me . . . Mr. Kurtz behaving badly to me
> . . . Making accusations that I wasn't doing
> my job properly, the way he spoke to me, the
> way he yelled at me and ordered me in his
> office, disregarding my own supervisor and
> doing it in front of other people.

App. 287-88. When asked what happened between the time her attorney first contacted Cort Furniture and her departure, she testified that the harassment "stepped up." App. at 284-86. Specifically, after her attorney contacted Cort Furniture, Kurtz and other employees became even more abusive than usual. It was during this period that Aman was informed that she was to be formally reprimanded and that employees had been instructed to compile complaint lists about her. It was also after her attorney's letter that Kurtz made his statement that "the blacks are against the whites," and that those who didn't like it should leave. Taken as a whole, a reasonable jury could certainly conclude that after being subjected to these conditions, Aman was constructively discharged.

### C. Retaliatory Discharge.

To establish a prima facie case for retaliatory discharge, a plaintiff must show: (1) that she engaged in a protected activity; (2) that she was discharged subsequent to or contemporaneously with such activity; and (3) that a casual link exists between the protected activity and the discharge. Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989). Cort Furniture argues, and the district court agreed, that Johnson was not fired for engaging in a protected activity because failure to participate in the internal investigation was a legitimate ground for her termination. Aman, slip op. at 17. Once again, this conclusion is not supported by the evidence when considered in the light most favorable to Johnson.

As a preliminary matter, protesting what an employee believes in good faith to be a discriminatory practice is clearly protected conduct. 42 U.S.C. 2000e-3(a); Griffiths v. Cigna Corp., 988 F.2d 457, 468 (3d Cir. 1993). Thus, "a plaintiff need

not prove the merits of the underlying discrimination complaint, but only that `he was acting under a good faith, reasonable belief that a violation existed.'" Griffiths, 988 F.2d at 468 (quoting Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990)). It is undisputed that Johnson complained to Cort Furniture's management about what she believed constituted discriminatory practices at Cort Furniture. Thus, Johnson's numerous complaints about discrimination and her refusal to "gather" more derogatory information to place in Aman's file following Aman's termination, separate and apart from her failure to attend the deposition, represent activities protected under Title VII.

But the fact that her discharge did not immediately follow these activities does not undermine her claim. We have held that the "mere passage of time is not legally conclusive proof against retaliation." Robinson v. S.E. Pa. Transp. Authority, 982 F.2d 892, 894–95 (3d Cir. 1993) (holding that the evidence was sufficient to demonstrate retaliation for activities that occurred two years prior to the termination). The issue remains whether a reasonable jury could conclude that Johnson was discharged because she engaged in protected activity. Cort Furniture has offered a facially legitimate reason for her discharge (her failure to attend the deposition), but has failed to demonstrate that Johnson cannot produce direct or indirect evidence to support her claim. Chipollini, 814 F.2d at 899. To the contrary, Johnson has provided sufficient circumstantial evidence so that a reasonable jury could conclude that she was retaliatorily discharged. First, there is undisputed evidence that Johnson complained about discrimination at Cort Furniture. It is also undisputed that Johnson complained that Aman in particular had been treated unfairly, and that she repeatedly refused to "gather" more derogatory information against Aman so Cort Furniture "could win the case against her." App. at 115–16.

It is also undisputed that Johnson was fired after she failed to appear for the deposition concerning Aman's employment at Cort Furniture. Cort Furniture's explanation for Johnson's dismissal was that her failure to attend the deposition was evidence of disloyalty. On the day she missed the deposition, she was told that "[y]ou have proven you are not loyal to this company, because of that I have to release you." App. at 2. It is worth noting that Johnson was not told that she was fired for insubordination or failing to comply with the company's internal policies. Instead, the contemporaneous reason offered for her discharge was disloyalty. In light of this evidence, Cort Furniture's decision to terminate Johnson could be seen as making good on Newton's threat to "come up there and get rid of all of you."

Moreover, Johnson has provided evidence which casts doubt upon Cort Furniture's reliance upon the deposition incident as the sole basis for her firing. Specifically, Johnson testified that she called various employees in Cort Furniture's Human Resources Department to inform them that she was willing to participate in a deposition but wanted to consult with an attorney and with human resources. Johnson testified that "I

told [Kim Martin] . . . that I wanted to talk to my attorney before I went, and I wanted to talk to human resources before I went.  She said `fine, keep in mind they will keep asking you to take the deposition.'  I said, `I don't have a problem with that as long as I know what my rights are.'"  App. at 3.  Cort Furniture failed to offer any evidence to rebut this testimony. Thus, there is evidence from which a reasonable jury could conclude that Cort Furniture was aware that Johnson did not refuse to participate in the internal investigation, but merely requested some time to understand the nature of the proceedings in which she was asked to participate.  In light of this evidence and drawing all inferences in Johnson's favor, a reasonable jury could conclude that there was no disloyalty and that Cort Furniture's proffered reason is a pretext to mask a retaliatory motive.

Finally, the fact-finder would be entitled to consider all of the evidence of a hostile environment in order to determine the reason for Johnson's firing.  Evidence of discrimination against other employees or of a hostile work environment is relevant to "whether one of the principal non-discriminatory reasons asserted by [an employer] for its actions was in fact a pretext for . . . discrimination."  Glass v. Philadelphia Elec. Co., 34 F.3d 188, 194. (3d Cir. 1994); Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1104 (8th Cir. 1988) ("Evidence of prior acts of discrimination is relevant to an employer's motive even where this evidence is not extensive enough to establish discriminatory animus itself.").  See alsoHeyne v. Caruso, 69 F.3d 1475, 1480 (9th Cir. 1995) (alleged sexual harassment of other employees other than plaintiff is relevant to prove employer's motive); EEOC v. Farmer Bros. Co., 31 F.3d 891, 897-98 (9th Cir. 1994) (evidence of employer's sexual harassment of female employees other than the plaintiff and evidence of disparaging remarks about women in general were relevant to determine motive).  As we have recognized, "an atmosphere of condoned [racial] harassment in the workplace increases the likelihood of retaliation for complaints in individual cases."  Glass, 34 F.3d at 195 (quoting Hawkings v. Hennepin Technical Center, 900 F.2d 153, 156 (8th Cir. 1990)). Viewed in the light most favorable to Johnson, a reasonable jury could conclude that given her exemplary employment history and the general evidence of a hostile environment, Johnson was fired because she had protested discrimination at Cort Furniture, and Cort Furniture believed that her hesitancy to attend the deposition meant that she would continue to complain of discrimination and testify against Cort Furniture in Aman's EEOC investigation.

### D.  Unequal Pay.

The final claim raised by Aman and Johnson is a claim of discriminatory pay.  As the district court correctly notes, in order to establish a case of unequal pay, plaintiffs must demonstrate "that [they] were performing work substantially equal to that of [white employees] who were compensated at [] higher rate[s] than [they were]."  Hohe v. Midland Corp., 613 F. Supp. 210, 214 (E.D. Mo. 1985), aff'd without op., 786 F.2d 1172 (8th

Cir. 1976).  To support their claim that they were paid less than white employees, Aman and Johnson rely almost exclusively on a comparison of Cort Furniture employees' job grade levels.  With the exception of a single individual, Aileen Wilson who performs the same job as Johnson in a different office, they did not provide any evidence to demonstrate that the jobs performed by the white employees were the same or that the employees had similar credentials.  Cort Furniture responded by providing evidence that an employee's pay was not solely determined by job grade level, but by job duties and the differences in pay structure among the sales, warehouse, and administrative staff.  Aman and Johnson have offered no evidence to rebut Cort Furniture's explanation, and at oral argument, they conceded that with the exception of the difference in pay between Johnson and Wilson, Cort Furniture's explanation of the pay differential between individuals with the same job grade was reasonable.

With respect to the pay disparity between Johnson and