Eduardo VEGA; Dell Walker, Appellants

v.

**CITY OF NEW BRUNSWICK; James M. Cahill; Thomas J. Loughlin, 3rd.**

No. 05–1873.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Feb. 28, 2006.

Filed Feb. 28, 2006.

Fredric J. Gross, Mount Ephraim, NJ, for Eduardo Vega and Dell Walker.

Susan K. O'Connor, Hoagland, Longo, Moran, Dunst & Doukas, New Brunswick, NJ, Lori A. Dvorak, Lynch Keefe Bartels, Shrewsbury, NJ, for City Of New Brunswick, James M. Cahill and Thomas J. Loughlin.

Before: SLOVITER, FUENTES, Circuit Judges, and BRODY,* District Judge.

## OPINION

SLOVITER, Circuit Judge.

### I.

Eduardo Vega and Dell Walker ("Appellants"), who are firefighters with the City of New Brunswick, New Jersey, appeal from the District Court's order granting summary judgment for the City, Mayor James M. Cahill, and Thomas Loughlin, III, its Business Administrator (collectively, the "City") on Appellants' claims of racial discrimination in employment.[1]

Vega, who is Hispanic, and Walker, who is black, filed this action against the City based on claims under 42 U.S.C. §§ 1981,

---

* Hon. Anita B. Brody, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment and apply the same standard as the district court. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir.2005).

1983, 1985, the New Jersey Law Against Discrimination (LAD), N.J. Stat. Ann. § 10:5–12, and for an alleged violation of the terms of a Consent Decree entered in 1980 by the United States District Court for the District of New Jersey in *United States v. New Jersey*, D.N.J. Civ. Nos. 77–cv–02054 and 79–cv–00184.

The City was a party to the 1980 Consent Decree which was reached in an action brought by the United States under Title VII of the Civil Rights Act of 1964 for an alleged pattern or practice of discrimination in the hiring and promotion of firefighters. By its terms, the Consent Decree provides in pertinent part that

> [t]he defendants are compelled by law and by entering into this Order acknowledge their obligation to, and agree they shall, refrain from engaging in any act or practice which has the purpose or effect of unlawfully discriminating against any black or Hispanic employee of, or any black or Hispanic applicant or potential applicant for employment with their respective fire departments because of such individual's race, color, or national origin. Specifically the defendants shall not discriminate against any such individual in hiring, assignment, training, discipline, promotion or discharge because of race, color, or national origin.

JA at 503. The Consent Decree also set a goal for the City to fill at least forty percent of its entry-level firefighter positions with minority applicants.

At all times relevant to this suit, the City appointed its firefighters through competitive examinations administered by the State of New Jersey's Merit System Board. In 1991, Vega and Walker took a

scheduled examination and qualified by their results to be placed on a list of eligible candidates for appointment as New Brunswick firefighters. The list Appellants' names were placed on, M9041N, was promulgated by the Merit System Board on November 30, 1993, with a total of 62 eligible candidates. Based on their scores, Vega and Walker ranked as numbers 34 and 36, respectively. The M9041N eligibility list had an original expiration date of November 29, 1994, but at the City's request the Merit System Board extended that date to November 29, 1995, so that the City could fill future vacancies.

In 1994, the City appointed fifteen new firefighters from the M9041N list, ten of whom were white and five of whom were members of minority groups. On May 12, 1995, the City hired another six eligible firefighters from the M9041N list, five whites and one Hispanic. The individuals hired in 1995 all started at a base salary of $29,879 in accordance with the terms of the Collective Bargaining Agreement (CBA) then in place between the City and its firefighter's union.[2] Under that CBA, entry level firefighters in 1995 began at a salary of $29,879, and with annual step increases in pay, reached a full-pay salary after five years of $51,283.

On April 28, 2005, just prior to hiring the six additional firefighters, the City's second request for a one-year extension of the M9041N eligibility list was submitted and ultimately granted, thereby extending the life of the list for another year, to November 29, 1996. After the City hired its six firefighters in May 1995, Vega and Walker reached the top two spots on the eligibility list. Defendant Loughlin, who made the request on the City's behalf for

---

**2.** The parties and the District Court have referred to the starting salary of these firefighters as "$28,730." The copy of the CBA included in the Joint Appendix on appeal reflects a starting salary for 1995 of $29,879. *See* JA at 174. Although we note this discrepancy, it is ultimately immaterial to our resolution of the appeal.

the second extension of the list's expiration date, was aware when making that request that Vega and Walker, two minority candidates, would be "next in line" for appointment.

In early 1996, City Fire Director James Riley recommended that two additional firefighters be hired from the certified list of eligible candidates. Mayor Cahill authorized Loughlin to conduct the hiring process which resulted in the appointment of Vega and Walker as firefighters with a hiring date of July 16, 1996.

Sometime around September 1994, the City and its firefighters' union began negotiations over a new CBA. After an impasse on several issues, the matter was referred to arbitration. Among the issues of concern to the City was the desire to cut costs by securing a lower starting salary with added step increases before new firefighters reached full pay. After a hearing on January 19, 1996, the City and the Union reached a stipulation on various issues, including wages. As memorialized in the Arbitrator's letter of January 31, 1996, the parties agreed that for employees hired on or after June 1, 1995, the starting salary would be $23,000, with a progression of six annual step increases in pay until the employee reached the top pay rate of $51,283 in the seventh year.[3] The parties agreed that this new salary structure would be effective prospectively only as of the date of the Arbitrator's award. Arbitration on the remaining unresolved issues went forward.

Thereafter, on June 13, 1996, Loughlin and the Union reached an agreement that their stipulation on salaries would "become effective immediately so that the City can now hire new firefighters at the $23,000 'Step 1' compensation rate." JA at 220. On June 14, 1996, Loughlin submitted a letter to Mayor Cahill noting this agreement and requesting permission to pursue the hiring of the next two candidates on the eligibility list, who Loughlin expected would be Vega and Walker. The Arbitrator then resolved the remaining issue between the City and Union, and in July 1997, the City of New Brunswick passed an ordinance, approved by the Mayor, in which it adopted retroactively to January 1, 1995, the two different pay schedules for firefighters hired before and after June 1, 1995. Vega and Walker, as noted, were hired on July 16, 1996, at starting salaries of $23,000 with the increased number of years to full pay.[4]

In their Complaint, Vega and Walker alleged that the City consciously chose to adopt the new pay scale retroactive to June 1, 1995, so that the five white firefighters hired in May 1995 would retain a base pay substantially higher than that Vega and Walker received; that the City made its decision to start Vega and Walker at a lower base pay knowing they were minority hires; and that the retroactive pay scale adjustment "was a cynical act of intentional race discrimination directed against each of the plaintiffs." JA at 29. In addition, Vega and Walker claimed that the "purpose or effect" of the City's ac-

---

**3.** For employees hired prior to June 1, 1995, they would remain at the higher salary ($29,879) and need five annual step increase to reach full pay ($51,283).

**4.** It is undisputed that Vega and Walker reached full pay in 2002. Notably, the M9041N list of eligibles expired in late 1996, and no new list of eligible candidates was

promulgated until 2000. The City appointed no new firefighters from 1997 through 1999. The City and the Union then negotiated a new CBA covering the period of 1999–2002 under which it hired ten firefighters, four of whom were minorities. Like Vega and Walker, those ten firefighters were hired at the lower starting pay with seven steps to full pay.

tions was discriminatory and violated the 1980 Consent Decree.

After discovery, Vega and Walker moved for partial summary judgment as to their Consent Decree and LAD claims, and the City moved for summary judgment as to all claims. Finding no genuine issue of material fact for trial on any of the claims, the District Court granted the City's motion. Vega and Walker timely filed this appeal.

## II.

As an initial matter, we conclude that Vega and Walker have waived their claims under 42 U.S.C. §§ 1981, 1983 and 1985 by failure to argue them on appeal. *See United States v. Pelullo,* 399 F.3d 197, 222 (3d Cir.2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."). Although Appellants make a passing reference to the § 1981 claim, *see* Appellants' Br. at 20, that alone is insufficient to raise the claim for review. We thus limit our discussion to the Consent Decree and LAD claims.

### 1. *Consent Decree*

■ Appellants contend that the City's conduct had a discriminatory "effect" insofar as the City started Appellants at a lower salary, thereby violating the 1980 Consent Decree.[5] As noted, the City is obligated by the terms of the Consent Decree to "refrain from engaging in any act ... which has the purpose or effect of unlawfully discriminating against any black or Hispanic employee ... because of such individual's race, color, or national origin." App. at 209. Appellants claim that the fact that they received a lower starting salary violated this language, and

they proffer as support the City's knowledge that Vega and Walker were minorities and would be the next two hires from the M9041N list; that the City delayed hiring Vega and Walker until after it had negotiated the new pay structure; and that the new pay structure was given a retroactive start date that protected the higher starting salaries of the six firefighters hired in May 1995, five of whom were white (and one Hispanic).

We agree with the District Court that Appellants' evidence is insufficient to survive summary judgment. While the Consent Decree focuses on the "effect" of acts taken by the City, its terms also expressly require that the acts complained of be taken "because of" the individual's race, color, or national origin. Drawing all reasonable inferences in Appellants' favor, a trier of fact could not reasonably find that the alleged negative "effect"—starting appellants at a lower initial salary—was the result of discriminatory actions undertaken *because of* their race. Instead, as the District Court observed, the City has adopted and applied the new salary structure in accordance with the collective bargaining terms negotiated with the Union, and the effect has been felt evenly by all new hires since 1996. Even accepting that Loughlin purposefully delayed the hiring of Vega and Walker for a few months while negotiations with the Union were on-going, a reasonable inference cannot be drawn that Loughlin made that decision with an intent to harm Appellants because of their race.

Appellants seek to infer a discriminatory purpose from the adoption of the retroactive effective date for the new pay structure. The effective date, however, was the product of negotiations between the City

---

**5.** Although Vega and Walker asserted in their complaint that the "purpose" of defendants' actions also violated the Consent Decree, they do no pursue that argument on appeal. Instead, they focus solely upon the "effect" of defendants' actions.

and the Union, and it is simply not reasonable on this record to infer that the City chose the date *because of* Appellants' race. It is undisputed that all firefighters hired before the effective date, regardless of race, began with the higher starting salary, while all hired after began with the lower salary. Appellants contend that the effective date shows discrimination because it served to retain a higher starting salary for the five white firefighters hired in May 1995. It strains credulity, however, to draw an inference from the City's actions that the effective date was adopted *because of* Appellants' race, color, or national origin. Appellants, as the non-movants, cannot survive summary judgment merely by relying upon the allegations of discriminatory intent set forth in their pleadings. *See Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir.2001).

In short, a reasonable trier of fact could not conclude that the City's actions were in violation of the Consent Decree.

### 2. *LAD Claim*

Appellants also claim that the delay in hiring so as to pay them less than the white firefighters hired in May 1995 violated the LAD. The District Court held, inter alia, that Appellants failed to state a prima facie case of discrimination. For the reasons already stated in connection with Appellants' claim under the Consent Decree, we agree that Appellants failed to raise an inference of discrimination based on race.

■ Appellants contend that the District Court erred in failing to apply the standards of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), to their LAD claim. The New Jersey Supreme Court, however, looks to the *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), framework as its "starting point" in LAD actions, *Andersen v. Exxon Co.*, 89 N.J. 483, 446 A.2d 486, 490 (1982), and we see no basis to conclude that the District Court erred in applying that framework here. Appellants cite *Grigoletti v. Ortho Pharm. Corp.*, 118 N.J. 89, 570 A.2d 903 (1990), where the New Jersey Supreme Court held that *gender* discrimination claims for unequal pay are to be judged by the EPA methodology. Appellants fail, however, to cite any precedent adopting the EPA methodology in a *race* discrimination case. Cf. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1087–88 (3d Cir.1996) (citing *Grigoletti* for proposition that LAD race-based claims "parallel the Title VII claims"). We conclude that the District Court applied the proper standards.[6]

■ Appellants contend that the District Court erred in rejecting their choice of comparators for the LAD claim. Appellants sought to compare their pay scale plight solely to that of the five white firefighters hired in May 1995, while the District Court held that a proper comparison must include the Hispanic firefighter also hired in May 1995 as well as the ten firefighters (four of whom were minorities) hired under the lower pay scale as part of the CBA covering 1999–2002. We agree with the District Court that Appellants' attempt to limit the comparators to the 1995 white hires was unjustified given the nature of Appellants' claim.

"[W]here a plaintiff claims ... racial discrimination in employment, the plaintiff may present evidence of the treatment of employees of other races as a basis for the trier of fact to infer that the differing treatment meted out to the plaintiff was

---

**6.** Appellants' request to certify their proposed *Grigoletti* question to the New Jersey Su- preme Court is denied.

based on race." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir.2005) (citation omitted). Appellants allege that they were started at a lower salary because of their race, whereas the City has claimed that implementation of the salary structure was unrelated to race and that all of the firefighters it hired were similarly situated with respect to its application of the new pay structure. A fair assessment of Appellants' claim requires a consideration of the City's evidence as to how it applied its salary structure to firefighters of all races under both the old and new CBAs. That evidence reveals no triable issue on the question whether the City purposefully delayed hiring Appellants in order to pay them less because of their race. Summary judgment was properly entered on the LAD claim.

### III.

We have considered all of Appellants' contentions on appeal and find them without merit. The District Court's judgment will be affirmed.