

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-5-2009

# Glen Perry v. Secretary Army

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3339

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Glen Perry v. Secretary Army" (2009). *2009 Decisions.* Paper 1223.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1223

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3339
_____

GLEN J. PERRY,

Appellant,

v.

FRANCIS J. HARVEY, SECRETARY
OF THE  UNITED STATES ARMY,

Appellee.


_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No.  06-cv-05386)
District Judge: Honorable Noel L. Hillman
_____

Submitted Under Third Circuit LAR 34.1(a)
June 2, 2009

Before: McKEE, HARDIMAN, and GREENBERG, *Circuit Judges*.

(Filed: June 05, 2009 )


_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Glen Perry appeals the District Court's summary judgment on his hostile work environment and retaliation claims against his former employer, the United States Army. We will affirm.

I.

An African-American, Perry worked as a civilian police officer at Fort Dix from 2000 to 2006. Throughout his employ, Perry had a contentious relationship with his immediate supervisor, Lieutenant Bonnie Graham-Morris, who is Asian-American. In 2003, Perry completed an anonymous survey on the work climate at Fort Dix, in which he criticized Graham-Morris's performance and insinuated that minorities were treated unfairly. Later that year, Perry filed an EEOC complaint alleging racial discrimination and tensions continued to flare between Perry and Graham-Morris. In 2005, incensed that Graham-Morris had received a promotion, Perry sent an inflammatory e-mail to 11 minority officers questioning Graham-Morris's qualifications and calling for widespread protest of "injustice" at the police department.

Three months later, in November 2005, the EEOC held a hearing on Perry's 2003 complaint, where fellow African-American police officer Rick Sanders offered testimony contradicting Perry's discrimination claims. Two weeks later, Perry was caught placing offensive materials in Sanders's mailbox, accusing Sanders of sleeping with Graham-Morris and calling him a "rat," "traitor," "lacky," and "fink Uncle Tom." This was the

final straw for the Director of Public Safety at Fort Dix, who notified Perry in writing of his termination. Perry's termination became final in October 2006 when the Merit System Protection Board (MSPB) upheld the Director's decision. In the meantime, the EEOC issued a ruling on Perry's initial complaint, rejecting his discrimination charges. In November 2006, Perry brought hostile work environment and retaliation claims in federal court under 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a). Perry's federal complaint also challenged the MSPB's decision to uphold his termination. The District Court granted summary judgment for the Army on all claims and Perry appeals.[1]

## II.

In reviewing a motion for summary judgment, we view the record and draw inferences in the light most favorable to the nonmoving party. We will reverse the District Court's grant of summary judgment if a reasonable jury could find for the nonmoving party. *See Moore v. City of Phila.*, 461 F.3d 331, 340 (3d Cir. 2006).

## A.

To prove his hostile work environment claim, Perry must show, *inter alia*, that his workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

---

[1]The District Court had jurisdiction over Perry's Title VII claims under 28 U.S.C. § 1331, and jurisdiction to review the MSPB's decision under 42 U.S.C. § 2000e-16(c) and 5 U.S.C. §§ 7702-7703. We have appellate jurisdiction under 28 U.S.C. § 1291.

3

116 (2002) (quotations omitted). Moreover, the discrimination must be both subjectively and objectively detrimental to the victim. *See Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001). In assessing the severity of alleged discriminatory treatment, "we consider the totality of the circumstances;" our analysis "must concentrate not on individual incidents, but on the overall scenario." *Caver v. City of Trenton*, 420 F.3d 243, 262-63 (3d Cir. 2005) (quotations and citations omitted). "[O]ffhanded comments and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim. Rather, the conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* at 262 (quotations and citations omitted). Title VII is not a "general civility code . . . [T]he ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" do not support a hostile work environment claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation omitted).

In this case, most of the evidence upon which Perry relies is not probative of discriminatory animus, much less severe or pervasive enough to support a hostile work environment claim. Over an eight-month period in 2003, Perry's police vehicle was reassigned; he was prohibited from attending a picnic as the department's Drug Abuse Resistance Education (DARE) representative; he was prohibited from working overtime; and he was temporarily marked AWOL by Graham-Morris. However, Perry does not rebut the Army's legitimate explanations for each of these actions: Perry was assigned to

4

desk duty and his vehicle was needed for patrols; Perry was no longer the department's D.A.R.E. representative at the time of the picnic; the department implemented a policy against overtime; and Graham-Morris justifiably, albeit wrongly, believed Perry was AWOL because he cleared his absence with a different supervisor. Perry cites racist remarks made by Graham-Morris's husband on two occasions, but these statements are not germane to Perry's hostile work environment claim because the husband was not employed by the police department and Perry offers no evidence to justify imputing his remarks to Graham-Morris. Even accepting Perry's version of these events — as we must at summary judgment — they do not support a hostile work environment claim.

Some of Perry's allegations, however, may be probative of a hostile work environment. In 2000, Perry once overheard Graham-Morris "refer to men of color as being dumb and useless." Appellant's Br. at 3. In 2003, Graham-Morris denied Perry leave to take his mother to a doctor's appointment, and wrongly advised him to report to a "phantom" meeting with the police chief. Most significantly, in late 2003, Graham-Morris approached Perry while sitting in a parked vehicle after his shift and asked, "What are you doing here, boy?" Finally, in 2004, Graham-Morris asked Perry for verification that he had taken a drug test, although such verification was not normally requested from other officers.

The foregoing evidence is insufficient as a matter of law for a reasonable jury to conclude that Perry was subjected to a hostile work environment because it is not severe

or pervasive enough to "to alter the conditions of [Perry's] employment and create an abusive working environment," *Nat'l R.R. Passenger Corp.*, 536 U.S. at 116, or to "detrimentally affect a reasonable person . . . in that position," *Weston*, 251 F.3d at 426. Perry's hostile work environment claim boils down to allegations that over the course of 10 months, Graham-Morris denied a leave request, lied to him about a meeting, requested verification of a drug test, and called him "boy."

Indeed, Perry concedes that the majority of this conduct was "petty in nature," Appellant's Br. at 24, but argues that the "boy" comment was severe enough to violate Title VII by itself. *See id.* at 22 (suggesting the District Court erred in finding Graham-Morris's actions neither severe not pervasive, because "a jury could find that under the circumstances the 'boy' comment was in fact 'severe'"). Accepting Perry's requested inference that "boy" was a racially motivated epithet, it does not rise above an "offhanded comment," *Caver*, 420 F.3d at 262, or "sporadic . . . abusive language," *Faragher*, 524 U.S. at 788. The Supreme Court has held that the "mere utterance of an [ethnic or racial] epithet which engenders offensive feelings in a [sic] employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (quotation omitted).

Viewing the "overall scenario" in the light most favorable to Perry, *Caver*, 420 F.3d at 263, we hold that no reasonable jury could conclude that the Army's conduct was severe or pervasive enough to create a hostile work environment.

6

B.

We turn now to Perry's retaliation claim, which is based on the filing of his EEOC complaints, the anonymous survey, and his e-mail opposing Graham-Morris's promotion. To establish a *prima facie* case of retaliation, an employee "must show that: (1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action." *Weston*, 251 F.3d at 430. If the employee establishes his *prima facie* case, "the familiar *McDonnell Douglas* approach applies in which the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its conduct and, if it does so, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Moore*, 461 F.3d at 342 (quotations omitted).

To the extent that Perry claims retaliation by Graham-Morris based on the anonymous survey, he cannot establish a *prima facie* case because the survey does not qualify as protected activity.[2] Title VII's retaliation provision prohibits discriminating

---

[2]Moreover, it is questionable whether Graham-Morris's conduct rises to the level of adverse employment action, even under the more lenient standard articulated in *Burlington N. & Santa Fe Ry.Co. V. White*, 548 U.S. 53, 68 (2006). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. . . . [N]ormally petty slights, minor annoyances, and simple lack of good manners will not [support a retaliation claim]." 548 U.S. at 68.

7

against an employee "because he has opposed any practice made an unlawful employment practice by [the statute]." 42 U.S.C. § 2000e-3(a). An informal complaint may qualify as protected activity if it "protest[s] what an employee believes in good faith to be a discriminatory practice." *Aman v. Cort*, 85 F.3d 1074, 1085 (3d Cir. 1996). In other words, a retaliation plaintiff must show that "he was acting under a good faith, reasonable belief that a violation existed" when he voiced a grievance. *Id.* "To determine if retaliation plaintiffs sufficiently 'opposed' discrimination, we look to the message being conveyed rather than the means of conveyance." *Moore*, 461 F.3d at 343 (quotation omitted). Although informal complaints may suffice, "the employee's 'opposition' to unlawful discrimination must not be equivocal [or vague]." *Id.* at 341-43.

Perry's response to the anonymous survey was too vague to qualify as opposition to unlawful practices under Title VII because his complaints were primarily directed at Graham-Morris's capabilities. Perry wrote that his supervisor "does not communicate any ideas;" "does not keep me informed at all;" provides "no backing at all;" "shows no interest at all in their (sic) employees;" "has NEVER discuss[ed] my training needs at all;" and "is not COMPETENT in their (sic) job." App. at 616. Perry also accused Graham-Morris of driving while intoxicated, harassing male officers, inappropriately discharging her weapon, and assaulting other officers. App. at 617.

The fact that Perry complained about other issues does not necessarily preclude the survey from qualifying as protected activity under Title VII. *See Moore*, 461 F.3d at 343

8

n.4.  But the survey makes only oblique reference to racial discrimination, in such vague fashion that it is impossible to judge whether Perry reasonably believed he was protesting a violation of Title VII.  The mere mention of race does not transform a general list of grievances into opposition to unlawful activity under Title VII.  The conduct that serves as the basis for Perry's Title VII claims occurred entirely after he completed the survey, and Perry cites no earlier conduct on appeal.  The survey itself neither suggests the acts Perry was protesting nor their alleged discriminatory basis.  We therefore hold that Perry cannot rely on the survey to establish a *prima case* of retaliation because it does not rise to the level of protected activity.

To the extent that Perry claims he was fired in retaliation for his inflammatory e-mail or for filing EEOC complaints, however, he may be able to establish a *prima facie* case.  Like the survey, Perry's e-mail is devoid of reference to any specific act that might be unlawful under Title VII.  However, its message may reasonably be interpreted as an objection to perceived racial discrimination in the promotion process, making it a somewhat closer call than the survey.  Assuming, *arguendo*, that the e-mail constitutes protected activity, Perry has established a *prima facie* case because the Army concedes that Perry was fired in part because of the e-mail, supporting a causal inference between Perry's opposition to racial discrimination and his termination.  Nevertheless, the Army rebuts Perry's *prima facie* case with legitimate, nonretaliatory reasons for his termination.

9

First, Perry was caught on videotape placing inappropriate and highly offensive materials in Rick Sanders's mailbox in retribution for Sanders's EEOC testimony. Second, the inflammatory manner in which Perry chose to communicate his objection to Graham-Morris's promotion was also inappropriate, designed to undermine the authority of the Director of Public Safety, and create disharmony throughout the department. Rather than voicing his concerns to his superiors, Perry essentially called for insurrection among minority officers. *See* App. at 180 ("As a closing item and remembrance 'Bloody Sunday March 1965.' They stood up, spoke up, walked up and made a difference in today's history. They took a stance why we don't and why we can't (sic). Ask yourself that.").[3] On appeal, Perry presents no argument whatsoever that these reasons are pretextual. *See* Appellant's Br. at 23-24 (confining retaliation argument to elements of the *prima facie* case). Although Perry's brief implies a factual dispute concerning the material found in Sanders's mailbox, he has effectively admitted responsibility by alleging in his complaint that the MSPB violated his First Amendment rights by firing him for the material.[4] *See* App. at 54. Because Perry fails to cast doubt upon the legitimate reasons for his termination proffered by the Army, we will affirm summary judgment on this claim as well.

---

[3]Perry's written termination also cited false statements he made in an EEOC affidavit and misuse of his Government computer in downloading the offensive material found in Sanders's mailbox.

[4]The District Court did not address this argument and Perry does not raise it on appeal.

10

## C.

Finally, we turn to Perry's argument that the MSPB erred in affirming his termination. We agree with the District Court that this argument is unavailing given that Perry has failed to show or even attempt to show that the reasons for his termination stated by the Army were pretextual. To the extent that Perry argues the MSPB was required to apply mixed-motive analysis, his argument fails because the Army's reliance on Perry's e-mail is not direct evidence of discrimination. The Army stated that Perry was fired for the unprofessional and inflammatory method in which he voiced his objections to coworkers, not for the objections themselves. At best, the e-mail establishes a *prima facie* case by supporting a plausible inference that Perry's objections to perceived discriminatory promotion practices might have been a causal factor in his termination. However, the Army successfully rebutted Perry's *prima facie* case by providing legitimate, nonretaliatory reasons for his termination that Perry fails to challenge. We will affirm summary judgment on this claim as well.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.

11