

Villanova University School of Law Digital Repository

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-24-2006

# Valdes v. Union City Bd Ed

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2554

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Valdes v. Union City Bd Ed" (2006). *2006 Decisions.* Paper 711.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/711

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 05-2554
_____

SABINO VALDES,

Appellant

v.

UNION CITY BOARD OF EDUCATION

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civ. No. 01-cv-05660)
District Judge: Honorable John C. Lifland

_____

Submitted Under Third Circuit LAR 34.1(a)
July 21, 2006

Before: SLOVITER, SMITH AND VAN ANTWERPEN, CIRCUIT JUDGES

(Filed: July 24, 2006)

_____

OPINION

_____

PER CURIAM

    Sabino Valdes appeals pro se from the order of the United States District Court for

the District of New Jersey granting the defendant's motion for summary judgment in this

action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("NJLAD").

## I.

Sabino Valdes was hired as a plumber by the Union City Board of Education (the "Board") in 1994. In 1995, he became Coordinator of Plumbing Activities responsible for purchasing materials and tools. From 1994 through 1998, Valdes was considered a stellar employee who received outstanding performance evaluations from his supervisor, William Hogan. But 1999 witnessed a downward spiral in relations between Valdes and the Board precipitated by the Board's decision not to hire Valdes as Director of Building and Grounds and by its decision to discipline him for abuse of sick leave in April and May 1999.

After he applied for the job of Director of Buildings and Grounds, Valdes took twenty-eight sick days from April 5 to June 16, 1999. Valdes spent some of the sick days assisting Neftali Cruz in his campaign for election to local office, by picking Cruz up and driving him around Union City. The Board investigated the matter and in September 1999, it charged Valdes with abuse of sick leave. On November 16, 1999, after unsuccessful attempts to reach a settlement, the Board notified Valdes that his pay would be docked five days for abuse of sick leave.

Meanwhile, in June 1999, the Board hired John Knudsen for the Building and Grounds position. Initially, Valdes appeared to work well under Mr. Knudsen. But once

2

he was disciplined for abuse of sick leave, Valdes started having problems with his new supervisor. Valdes alleged that from November 1999 until his temporary suspension on April 3, 2000, Knudsen singled him out for discipline for improper dress at work, took his computer, stripped him of some of the administrative responsibilities he had performed for four years, followed Valdes to his work assignments, required him to report his whereabouts by phone, verbally harassed him in front of other employees, assigned him a vehicle that had no heat in the middle of winter, made him work during his lunch break, and allowed at least two other employees to verbally harass him on account of his race and ethnic origin.

Valdes received his first negative performance evaluation in March 2000. On April 3, 2000, the Board suspended Valdes with pay for abuse of sick leave. In August 2000, the Board filed tenure charges against Valdes for unbecoming conduct, insubordination, and excessive absenteeism, arising out of incidents beginning in 1999 and continuing through August 2000. The Board proposed a settlement agreement that all tenure charges be dropped and that Valdes be allowed to return to work.[1] In October 2000, the Commissioner of Education rejected the Board's proposal, but allowed Valdes to continue working pending the tenure hearing. In November 2000, during the pendency of the tenure charges, Valdes applied unsuccessfully for the position of Director of Custodial Services. The Board hired a Caucasian male, Louis Fusco, to fill the position.

---

[1] Valdes could only return to light duty work for medical reasons unrelated to this matter.

Valdes filed a complaint with the EEOC and the New Jersey Department of Law and Public Safety, Division of Civil Rights in October 2000. The EEOC issued a right-to-sue letter on September 13, 2001, a copy of which was sent to the Board. On December 5, 2001, Valdes filed a counseled employment discrimination complaint in District Court. On December 18, 2001, the Board amended its tenure charges, adding numerous incidents of insubordination and unbecoming conduct that occurred in 2001. On January 10, 2002, Valdes was suspended with pay. A twenty-five day hearing on the tenure charges occurred from May through August 2002. In May 2003, the Administrative Law Judge recommended Valdes's removal from his tenured position. On June 23, 2003, Valdes was terminated. The State Board of Education affirmed the Commissioner's decision in August 2004.

In the Complaint he filed in District Court, Valdes claimed job discrimination on account of his status as an African-American of Cuban descent and retaliation for filing an EEOC complaint, in violation of Title VII and the NJLAD. He sought backpay, damages, and injunctive relief. The Board filed a motion for summary judgment claiming that Valdes failed to establish a prima facie case of race/ethnicity discrimination and that, in any event, the Board terminated Valdes for legitimate, nondiscriminatory reasons. The Board also claimed that issue preclusion applied based on the findings of the Administrative Law Judge in the tenure proceedings. Valdes countered that his termination on the tenure charges was pretextual and that issue preclusion did not apply.

Upon consideration of the parties' written submissions, the District Court granted

4

summary judgment for the Board. On the merits, the District Court held that (1) although Valdes established a <u>prima</u> <u>facie</u> case with respect to the Board's failure to promote him to the Director of Building and Grounds position in 1999, he failed to show that the Board's reason for not to promoting him, namely his abuse of sick leave, was pretextual; (2) Valdes failed to establish a <u>prima</u> <u>facie</u> case that the Board discriminated against him on account of his race/ethnicity with respect to the position of Director of Custodial Services because Valdes could not demonstrate that he was qualified for the job in light of his excessive absences from work, negative performance evaluations, and the existence of tenure charges against him; (3) there was no causal link between Valdes's protected EEOC activity and the alleged retaliatory actions because (a) the Board was not served with a copy of the EEOC complaint until January 2002, well after it had amended the tenure charges, and (b) the other adverse actions alleged by Valdes had occurred before he filed an EEOC complaint; and (4) Valdes failed to make out a hostile work environment claim. The District Court also held that issue preclusion did not apply in Valdes's case. On April 29, 2005, the District Court granted summary judgment in the Board's favor as to all claims. Valdes timely appealed.

## II.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over an order granting summary judgment. <u>See</u> <u>Pub. Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals, Inc.</u>, 913 F.2d 64 (3d Cir. 1990). Summary judgment shall be granted when "no genuine issue [exists] as to any material fact and

[when] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the facts in the light most favorable to the nonmoving party and we draw all inferences in that party's favor. See Reitz v. County of Bucks, 125 F.3d 139, 143 (3d Cir. 1997). We will affirm substantially for the reasons set forth by the District Court in its opinion.

We agree with the District Court that summary judgment in the Board's favor was warranted with respect to Valdes's Title VII claims concerning the Board's failure to promote him to the positions of Director of Building and Grounds and Director of Custodial Services. Assuming in Valdes's favor that he made out a prima facie case of employment discrimination in each instance, we turn to whether he could successfully rebut the Board's proffer of a legitimate non-discriminatory reason for each alleged adverse employment action. Proceeding under a "pretext" framework, a plaintiff who establishes a prima facie case of discrimination must then demonstrate by a preponderance of the evidence that the employer's legitimate, nondiscriminatory reason for taking an adverse employment action is merely pretextual, and that the true reason for the adverse employment decision was discrimination. See Iadimarco v. Runyon, 190 F.3d 151, 166 (3d Cir. 1999). Here, the Board explained that it did not promote Valdes to Director of Buildings and Grounds because of his abuse of sick leave in 1999 and that Valdes did not get the Custodial Services job because of his misconduct and poor performance evaluations in 2000.

Valdes was required to "point to some evidence, direct or circumstantial, from

6

which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994). This burden is met through a demonstration that "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason are such that a reasonable factfinder could rationally find them 'unworthy of credence.'" <u>See</u> <u>id.</u> at 765.

Valdes has not made this showing. He attempts to demonstrate that the Board's reasons for deciding not to promote him were a pretext for race/ethnicity discrimination by emphasizing that his negative performance evaluations and the decision not to promote him, even though he was qualified, were wrong. This Court has held that "it is not enough for a plaintiff to show that the employer's decision was wrong or mistaken, because the issue is whether the employer acted with discriminatory animus." <u>Abramson v. William Paterson College of N.J.</u>, 260 F.3d 265, 283 (3d Cir. 2001). Without some other evidence that would call into question the credibility of his supervisors' evaluation of his work or the Board's decision not to promote him, Valdes's assertions do not amount to a showing of pretext. <u>See</u> <u>Fuentes v. Parker</u>, 32 F.3d 759, 766 (3d Cir. 1994).

Beyond his own opinion that the Board treated him wrongfully, unprofessionally, and unfairly, Valdes offers no evidence to rebut the explanations the Board provided to support its decisions with respect to Valdes's promotion claims. Valdes may disagree with the wisdom, fairness, or correctness of the Board's actions, but disagreement,

7

without more, does not rebut the Board's legitimate non-discriminatory reasons for its actions. Absent any evidence that would undermine the Board's articulated reasons for its decisions, Valdes cannot show discriminatory animus, and cannot avert summary judgment on his Title VII claims. As for Valdes's race-based hostile work environment claim, the District Court properly determined that Valdes failed to show that his work environment was permeated with discriminatory intimidation, ridicule, and insult that was severe or pervasive enough to alter the conditions of his employment. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Valdes argues that the District Court did not afford him the opportunity to show that the Board's proffered non-discriminatory reasons for not promoting him were pretextual. There is nothing in this record that leads us to the conclusion that the District Court decided summary judgment prematurely, without giving Valdes adequate time for discovery or for responding to the Board's summary judgment motion.

Valdes also claimed that the Board retaliated against him for filing EEOC charges by amending the tenure charges in 2001, which led to his termination in 2003. To make out a retaliation claim under Title VII, a plaintiff must show that: (1) he engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneously with the protected activity; and (3) a causal link exists between the protected activity and the employer's adverse action. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). If a plaintiff successfully establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason

8

for the adverse action. Id. Here, Valdes was engaged in protected activity when he pursued EEOC charges in 2000. See 42 U.S.C. § 2003-3a; see also Abramson v. William Paterson College, 260 F.3d 265, 288 (3d Cir. 2001). Valdes's termination constitutes an adverse action. Therefore, the primary issue before us is whether Valdes can demonstrate a causal link between his protected activity and the Board's actions that eventually led to his termination.

The causal link may be established by the "temporal proximity between the protected activity and the termination" or by proof that the employer "engaged in a pattern of antagonism in the intervening period." Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997). It may also be established from "other evidence gleaned from the record as a whole from which causation can be inferred." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000). Viewing the evidence in the light most favorable to Valdes, we find nothing in the record to support a finding of a causal connection between the filing of the EEOC charges and his subsequent termination. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Stewart v. Rutgers, The State Univ., 120 F.3d 426, 431 (3d Cir. 1997).

Valdes alleged in his Complaint, that after he filed EEOC charges in 2000, his supervisors subjected him to more stringent review and sought to induce his termination by eliminating his job responsibilities and by treating routine daily interactions as incidents of unprofessional conduct and insubordination. However, it is undisputed that Valdes was terminated based on continuing misconduct occurring before and after the

9

EEOC complaint was filed. The Board amended the tenure charges in December 2001, more than a year after the filing of the EEOC Complaint. See Cert. of Thomas Kobin, Exhs. 23 & 24. We agree with the District Court that the evidence failed to establish a causal link between the protected activity and the alleged adverse employment action. See Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996).

We have thoroughly reviewed Valdes's remaining arguments on appeal and find them to be meritless.

Accordingly, we will affirm the judgment of the District Court. Valdes's motion to supplement the record is denied. To the extent that Valdes seeks to submit documents and transcripts that are not part of the District Court record, the motion is denied pursuant to Federal Rule of Appellate Procedure 10(a). As for the documents and transcripts that are part of the District Court record, the Board's motion to file a supplemental appendix containing the District Court record, which Valdes did not oppose, was granted in March 2006, and thus, the documents and transcripts are already properly before this Court.