**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4552
_____

REGINALD FENTER,
                                        Appellant

v.

MONDELEZ GLOBAL, LLC.
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civ. Action No. 2-11-cv-04916)
District Judge: Honorable Robert F. Kelly
_____

Submitted Pursuant to LAR 34.1(a)
on November 6, 2013

Before: GREENAWAY JR., VANASKIE, and ROTH, *Circuit Judges*

(Filed: August 4, 2014)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Appellant Reginald Fenter appeals the District Court's grant of summary judgment

in favor of Mondelez Global LLC, formerly known as Kraft Foods Global, Inc. ("Kraft"),

in this employment discrimination action asserting claims under 42 U.S.C. § 1981 and the

New Jersey Law Against Discrimination, N.J. STAT. ANN. § 10:5-1–10:5-49, for disparate treatment, hostile work environment, constructive discharge, and retaliation. For the reasons that follow, we will affirm.

I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we set forth only those facts necessary to our analysis.

Fenter, an African-American, was employed by Kraft from July 8, 1974 until he retired on February 1, 2008. Fenter began his career at Kraft as a sales representative. Throughout his 33 years with the company, Fenter was promoted to various positions, including account representative, sales supervisor, customer business manager, and retail sales manager – the position he held at the time of his retirement.

In addition to several promotions, Kraft recognized Fenter's exemplary sales performance by bestowing upon him company awards and consistently giving him positive annual performance reviews. Fenter received an annual performance rating of "Exceeds Expectations" 24 times, and a rating of "Fully Meets Expectations" 9 times. He never received a negative performance review.

In 2000, Kraft purchased and merged with Nabisco. For several years after the merger, Kraft and Nabisco maintained separate sales forces, and Fenter remained responsible for selling only Kraft products. Then, around June 2007, Kraft implemented a new sales strategy known as "Wall-to-Wall," combining the Kraft and Nabisco sales forces. After the implementation of Wall-to-Wall, sales representatives and retail sales

managers, including Fenter, became responsible for selling a portfolio consisting of both Kraft and Nabisco products.

As part of this strategy, Kraft designed new sales territories and assigned a sales team to cover the geographic region comprising each new territory. In June 2007, Fenter was assigned to sales team 655, which was responsible for the sale of Kraft and Nabisco products throughout the Northern New Jersey sales territory. The Northern New Jersey sales territory included Newark, East and West Orange, Irvington, Paterson, and Jersey City.

Dissatisfied with the sales territory to which he was assigned as well as the composition of the sales team with which he had to work, Fenter retired on February 1, 2008. In connection with his retirement, he requested a severance package, but his request was denied on the ground that the company severance pay policy excluded those who voluntarily retired.

More than three years after retiring, Fenter brought this race discrimination action against Kraft. His complaint, filed on August 1, 2011, asserted claims of disparate treatment, racially hostile work environment, constructive discharge, and retaliation under 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination stemming from the assignment of his new sales territory and sales team, as well as the denial of his request for severance pay. The complaint alleged that Kraft assigned Fenter to an unfavorable sales team in a distant and crime-ridden sales territory because of his race and in retaliation for having complained about Kraft's racial discrimination. According

to Fenter, he was assigned to a sales territory spanning an area that required him to travel between 48 and 82 miles from his home, but white retail sales managers were assigned to territories closer to where they lived. Fenter also asserted that his sales team was comprised of poor performing sales representatives who had less experience selling Nabisco products than the individuals who made up the sales teams under the supervision of his white peers. He claimed that the sales team and sales territory to which he was assigned as part of Wall-to-Wall created a work environment so intolerable that he was forced to retire, and thus was constructively discharged. Further, Fenter contended that Kraft retaliated against him by denying his request for severance pay.

On December 27, 2011, the District Court dismissed Fenter's claims under the New Jersey Law Against Discrimination as time-barred, and the case proceeded to discovery on the Section 1981 claims. On August 7, 2012, Fenter filed a motion to compel, seeking to force Kraft to more fully respond to certain interrogatories and requests for production of documents. The District Court denied Fenter's motion on August 24, 2012, and discovery closed on August 31, 2012. Following discovery, Kraft moved for summary judgment. Fenter opposed Kraft's motion for summary judgment by requesting additional discovery pursuant to Federal Rule of Civil Procedure 56(d), and by arguing that he presented sufficient evidence to survive summary judgment. On November 14, 2012, the District Court denied Fenter's request pursuant to Rule 56(d) and granted summary judgment in favor of Kraft. This appeal followed.

II.

A.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment, "applying the same test that the District Court . . . applied and viewing the facts in the light most favorable to the nonmoving party." *Schneyder v. Smith*, 653 F.3d 313, 318 (3d Cir. 2011). We will affirm a grant of summary judgment where our review reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Interstate Outdoor Adver., L.P. v. Zoning Bd. of Twp. of Mount Laurel*, 706 F.3d 527, 530 (3d Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).

In a case such as this one, where a plaintiff bringing an action under 42 U.S.C. § 1981 puts forth only indirect evidence of discrimination, we apply the familiar burden shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jones v. School Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) (applying *McDonnell Douglas* framework to § 1981 claim). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of making a prima facie showing of discrimination. *See McDonnell Douglas,* 411 U.S. at 802. The burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employment actions at issue. *Id.*

If the defendant meets its "relatively light burden by articulating a legitimate reason for the unfavorable employment decision," the burden of production shifts back to

the plaintiff to present evidence from which a reasonable factfinder could infer that the employer's proffered reasons are pretextual. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). To defeat summary judgment at the pretext stage, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764.

The primary issue on appeal is whether the District Court correctly concluded that Fenter failed, at the third stage of the *McDonnell Douglas* framework, to present evidence from which a jury could reasonably find that the justifications offered by Kraft for the employment actions at issue were pretexts for unlawful discrimination. To survive summary judgment, it is not enough for a plaintiff to simply declare that the reasons proffered by the employer are pretextual. *See Fuentes*, 32 F.3d at 765. The plaintiff must point to evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action[s] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Id.* (internal citation, alterations, and quotation marks omitted). We agree with the District Court that Fenter did not present sufficient evidence

to enable a rational jury to discredit the non-discriminatory reasons advanced by Kraft for the employment decisions at issue in this case.[1]

In its motion for summary judgment, Kraft asserted that it followed a three step approach in designing sales territories and assigning to those territories sales representatives and retail sales managers. The company began by reconfiguring the geographic landscape comprising its sales territories. According to Kraft, the geographical makeup of the new territories was determined based on business continuity and business needs, which took into consideration several factors, including: the number of stores in each market; the distance between stores selling Kraft products within a given region; and the level of influence that Kraft had over merchandising in different stores.

Kraft asserts that once it had demarcated the new sales territories, the company assigned each sales representative to a particular territory "based on their experience and knowledge of the customer, knowledge of the territory, familiarity with personnel in the store, and residence of the sales representative." (App. 241.) Fenter's claim that he was assigned to an inexperienced sales team for discriminatory or retaliatory reasons is

---

[1]    Like the District Court, we assume arguendo that Fenter has established a prima facie case of discrimination. Because we find that Fenter has failed to demonstrate pretext, we need not resolve the issue of whether the relevant employment decisions qualify as "adverse employment action[s]," which we have defined as "one[s] which [are] 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (internal quotation marks omitted).

unfounded, according to Kraft, because the company did not consider sales representatives' performance evaluations when assigning them to sales territories.

Kraft avers that business continuity and business needs were the foremost factors that the company considered in designing sales territories and constructing teams of sales representatives to cover the territories. Kraft explains that travel distance played only a minor role in the sales territory that each retail sales manager was appointed to cover, and "[a]ll Kraft heritage employees were challenged when Wall-to-Wall was implemented . . . ." (App. 240.)

We agree with the District Court that Fenter has failed to provide any evidence that the reasons offered by Kraft regarding Fenter's sales team and sales territory assignments were pretexts for unlawful discrimination. Fenter does not rebut Kraft's reasons for assigning him to sales team 655 in the Northern New Jersey sales territory. Furthermore, Fenter has not presented any evidence to indicate that Kraft "acted with discriminatory animus." *Burton v. Teleflex Inc.*, 707 F.3d 417, 431 (3d Cir. 2013). We will therefore affirm the District Court's grant of summary judgment in favor of Kraft on Fenter's Section 1981 claims for disparate treatment.

We also agree with the District Court that Fenter failed to present sufficient evidence to avoid summary judgment on his hostile work environment and constructive discharge claims. To make a prima facie case of hostile work environment, a plaintiff must establish the following five elements: (1) he suffered intentional discrimination because of his race; (2) the discrimination was severe or pervasive; (3) the discrimination

detrimentally affected him; (4) the discrimination would have detrimentally affected a reasonable person of the same race in his position; and (5) there is a basis for employer liability. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1082 (3d Cir. 1996). To establish that a hostile work environment led to a constructive discharge, a plaintiff must further show that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Id. at 1084* (quoting *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 888 (3d Cir. 1984)).

Fenter failed to present evidence that, because of his race, he was subjected to harassment "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quotation marks omitted). While Fenter was dissatisfied with his sales team and sales territory assignments, neither his assignments nor the treatment he received rose to the level of an actionable hostile work environment. Because Fenter failed to establish a hostile work environment claim, it follows that he did not meet the higher standard necessary to show constructive discharge. *See Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004) ("A hostile-environment constructive discharge claim entails something more [than what is required to establish a hostile work environment claim].").

In addition to his discrimination claims, Fenter claims that he was the victim of unlawful workplace retaliation. For a claim of retaliation under Section 1981, the same *McDonnell Douglas* burden-shifting framework discussed above with respect to discrimination applies. *See Jones*, 198 F.3d at 410. In order to establish a prima facie

case of retaliation, an employee must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the employee's protected activity and the purportedly adverse employment action. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).

If the employee establishes his prima facie case, "the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its conduct . . . ." *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006) (internal quotation marks omitted). If the employer carries its burden, it will be entitled to summary judgment unless the plaintiff produces "some evidence from which a jury could reasonably reach [the] conclusions" both "that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.*

Fenter asserts that Kraft retaliated against him for having complained about race discrimination and for his activities in support of the Black Sales Caucus.[2] He claims that Kraft did so by assigning him to an undesirable sales team and a sales territory that required him to travel farther than his white peers, as well as by refusing his request for a severance package upon retirement.

We need not decide whether Fenter established a prima facie case of retaliation, because, even if he had, Fenter does not provide any evidence to undermine Kraft's

---

[2] Fenter was a member of Kraft's Black Sales Caucus, whose principal objective was to protect the rights of minority sales employees and assist them in advancing their careers at Kraft. Compl. ¶ 12. As part of Fenter's involvement in this group, he mentored eight employees, and advocated forcefully for the promotion of four qualified African American sales representatives. *Id.*

10

legitimate, nonretaliatory reasons for making the employment decisions of which he now complains. As previously discussed, Fenter failed to discredit Kraft's explanation that he was assigned to sales team 655 and the Northern New Jersey sales territory based on business continuity and business needs.

With respect to severance pay, Kraft asserts that Fenter was ineligible for a severance package under the company's severance pay plan, which states that "[a]n Employee shall not be eligible for severance pay under this Plan if . . . the Employee voluntarily resigned from employment with the Employer." (App. 424.) Fenter does not deny that adherence to internal policies is a legitimate, nondiscriminatory business justification. *See e.g. Goosby v. Johnson & Johnson Med.*, *Inc.*, 228 F.3d 313, 322-23 (3d Cir. 2000) (finding that employer presented a legitimate, nondiscriminatory reason when it terminated an employee according to company policy). Rather, he asserts that Kraft should have provided him with severance pay because the company deviated from its own policy on four occasions by providing severance packages to employees who did not meet its severance pay plan eligibility criteria.[3] But as Fenter concedes, each of the alleged comparators that he offers in support of his claim that Kraft denied him severance

---

[3] Under Kraft's severance pay plan, an employee is eligible for a severance package only "if the Employee's employment with an Employer is terminated through no fault of the Employee" as the result of: (i) a permanent reduction in workforce; (ii) a permanent shutdown of a plant, department, or subdivision thereof; or (iii) a job elimination. (App. 423.)

pay for retaliatory reasons – Stanley White,[4] Tim Galloway, Karl Piergiorgi and John McCleary – concluded his employment with Kraft under circumstances different than Fenter's. Moreover, White, Galloway, Piergiorgi and McCleary all stopped working at Kraft after Fenter had already retired.

Although Fenter has identified four employees who received severance packages from Kraft, he has not identified any similarly situated employees who received severance pay upon voluntarily retiring under circumstances similar to those before us. Thus, Fenter cannot overcome Kraft's reliance on its established Severance Pay Plan, and the District Court properly held that Kraft was entitled to summary judgment on Fenter's retaliation claim arising from Kraft's refusal to provide him with severance pay. *Id.*

B.

Fenter also argues that the District Court erred by denying his motion to compel as well as his related motion for additional discovery pursuant to Federal Rule of Civil Procedure 56(d). We review discovery related matters, including a district court's denial of a Rule 56(d) motion, for abuse of discretion. *Washington v. Hovensa LLC*, 652 F.3d

---

[4] Stanley White is not a proper comparator for demonstrating that Fenter was denied a severance package based on racially motivated retaliation because, in addition to retiring after Fenter, Mr. White is an African American. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998) (noting that to overcome the employer's legitimate, non-retaliatory reason for its actions, a plaintiff may show that "that the employer has discriminated against other persons *within* the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons *not within* the protected class.") (emphasis added)).

340, 348 n.6 (3d Cir. 2011); *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 324 n.6 (3d Cir. 2005).

Upon review of the record, we conclude that the District Court correctly held that Kraft adequately responded to Fenter's interrogatories and document requests. Accordingly, the Court did not err in denying Fenter's motion to compel Kraft to produce certain documents or in refusing to compel Kraft to respond further to Fenter's interrogatories.

Nor did the District Court err in denying Fenter's request for an extension of time to conduct additional discovery. If a party opposing summary judgment "believes that s/he needs additional time for discovery, Rule 56(d) specifies the procedure to be followed." *Pa. Dep't. of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012) (internal quotation marks and alterations omitted). We have interpreted the rule as requiring that "a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling v. City of Phila.*, 855 F.2d 136, 139-40 (3d Cir. 1988) (addressing Rule 56(f), the predecessor to Rule 56(d)). Except in "the most exceptional cases, failure to comply with [Rule 56(d)] is fatal to a claim of insufficient discovery on appeal." *Bradley v. United States*, 299 F.3d 197, 207 (3d Cir. 2002).

Fenter's counsel did submit an affidavit in support of Fenter's request for additional discovery, but the affidavit failed to state how the sought after documents and

information would have precluded summary judgment.  Fenter therefore failed to comply with Rule 56(d), and the District Court correctly denied Fenter additional discovery.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.